**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>GREEN SAPPHIRE HOLDINGS, INC.,<br><br>Putative Debtor. | Case Number 26-33254-mv17<br><br>Chapter No.: 7 (Involuntary) |

**GLOBAL CAPITAL PARTNERS, LLC'S MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Pages(s)**

TABLE OF CONTENTS ........ i
PRELIMINARY STATEMENT ........ 1
FACTUAL BACKGROUND ........ 3
**A.** Green Sapphire ........ 3
**B.** Prelude to the Illinois Bankruptcy Case—the Underlying Global Capital-Green Sapphire Dispute ........ 5
**C.** The Illinois Bankruptcy Case ........ 6
**D.** Dismissal for Bad-Faith Filing and the One-Year Refiling Bar ........ 10
**E.** The Petition in This Case ........ 10
**F.** Reopening of the Illinois Case ........ 11
ARGUMENT ........ 12
I. Venue Is Not Proper in the Northern District of Texas ........ 12
**A.** Green Sapphire Is Not Domiciled in Texas and Does Not Have Its Principal Place of Business in Texas. ........ 12
**B.** Green Sapphire's Principal Assets Are Not in the Northern District of Texas. ........ 13
II. The Interests of Justice and Convenience of the Parties Favor Transfer to the Northern District of Illinois. ........ 14
**A.** The Debtor's 2025 Choice of Forum is Entitled to Great Weight. ........ 14
**B.** The Section 1412 Factors Also Warrant Transfer to the Northern District of Illinois. ........ 17
CONCLUSION ........ 19
CERTIFICATE OF SERVICE ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clark v. Stout Risius Ross, LLC*, 2026 WL 686164
(N.D. Tex. Mar. 11, 2026) .......... 17

*In re Commonwealth Oil Refining Co*., 596 F.2d 1239 (5th Cir. 1979) .......... 2, 17

*In re Cox Operating, LLC*, 652 B.R. 49 (Bankr. E.D. La. 2023) .......... 15-16

*In re Enron Corp*., 274 B.R. 327 (Bankr. S.D.N.Y. 2002) .......... 15-16

*In re ERG Intermediate Holdings, LLC*,
2015 WL 6521607 (Bankr. N.D. Tex. Oct. 27, 2015) .......... 12

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) .......... 13

*In re Holmes*, 306 B.R. 11 (Bankr. M.D. Ga. 2004) .......... 15

*In re Interlink Home Health Care, Inc*., 283 B.R. 429 (Bankr. N.D. Tex. 2002) .......... 19

*In re Manchester, Inc*., 417 B.R. 377 (Bankr. N.D. Tex. 2009) .......... 15, 19

*In re Patriot Coal Corp*., 482 B.R. 718 (Bankr. S.D.N.Y. 2012) .......... 16

*Matter of Peachtree Lane Assocs., Ltd.*, 150 F.3d 788 (7th Cir. 1998) .......... 15

*In re Peachtree Lane Assocs., Ltd*., 198 B.R. 272 (Bankr. N.D. Ill. 1996) .......... 13

*In re Pope Vineyards*, 90 B.R. 252, 256 (Bankr. S.D. Tex. 1988) .......... 18-19

*In re: 777 Partners LLC, Debtor*, 2026 WL 2479914
(Bankr. S.D. Fla. Aug. 24, 2026) .......... 15

*In re Schouten*, 657 B.R. 531 (Bankr. N.D. Tex. 2024) .......... 17

*In re Uslar*, 131 B.R. 22 (Bankr. E.D. Pa. 1991) .......... 15

**Statutes and Rules**

11 U.S.C. § 105(a) .......... 14

11 U.S.C. § 1112(b) .......... 2, 10

28 U.S.C. § 1406 .......... 1, 12, 19

28 U.S.C. § 1408 .......... 1, 12, 15, 19

28 U.S.C. § 1412 .......... 1-2, 14-15, 17, 19

Fed. R. Bankr. P. 1014 .......... 1-2, 14-15, 19-20

Global Capital Partners, LLC ("Global Capital"), by and through its undersigned counsel, hereby moves this Court pursuant to 28 U.S.C. §§ 1406, 1408 and 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure for entry of an order transferring this bankruptcy case to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. In support of this Motion, Global Capital states as follows:

## **PRELIMINARY STATEMENT**

1. Global Capital moves to transfer this case to the Northern District of Illinois, Eastern Division, which is the proper forum. Alleged debtor Green Sapphire Holdings, Inc. ("Green Sapphire") is already the debtor in a Chapter 11 case it chose to file last May in that forum (the "Illinois Bankruptcy Case"). Green Sapphire's choice of venue made sense. Illinois is where Green Sapphire has its principal place of business.[1] It is where its back office is located. It is where its directors and its functional financial officer live, and where it is registered to do business.

2. The Illinois case was assigned to Chief Judge Jacqueline P. Cox. From May 14, 2025, through July 22, 2026, Judge Cox presided over numerous contested matters and extensive proceedings, gaining deep familiarity with the debtor, its assets, its creditors, and the complex web of underlying disputes. She is familiar with the decisions of the Delaware Court of Chancery on the key state law questions, reached after trial and after she lifted the automatic stay for that purpose. That familiarity includes the numerous matters that Green Sapphire filed in her court and other jurisdictions, or threatened to file, after it lost at trial in the Court of Chancery. It includes the ownership of international assets, which has been decided by her and not appealed. The Illinois Bankruptcy Court received Green Sapphire's asset schedules, statements of financial affairs and

[1] Exhibit 1, Voluntary Petition for Non-Individuals Filing for Bankruptcy, May 14, 2025, *In re Green Sapphire Holdings, Inc.*, No. 25 B 07412 (N.D. Ill. Bankr.) ("*In re Green Sapphire I*") at page 1.

monthly operating reports and ruled on sharply contested motions, including motions for relief from stay, a motion to void the Delaware judgment, a motion to dismiss, and issues of contempt. These are strong reasons to direct this case to her court.

3. On July 17, 2026, Judge Cox dismissed the Illinois Case for cause pursuant to 11 U.S.C. § 1112(b), finding that the case had been filed in bad faith, and barred Green Sapphire from refiling for one year in response to a motion filed by Global Capital seeking that relief.[2] This was not the result that Green Sapphire or the petitioning lawyers wanted. When Global Capital promptly moved the Delaware Court of Chancery for appointment of a receiver for Green Sapphire given its open and flagrant contempt for that court's orders—despite the Court of Chancery's statutory authority over Delaware corporations—the petitioning creditors, four law firms that represent Green Sapphire and other entities in the Ritchie Family Office (at least two of them at this moment and are undertaking new work), rushed to file this action.

4. But they filed in a district that does not have venue. Green Sapphire is a Delaware corporation with its principal place of business in the Northern District of Illinois (as it pled just a month before this action was commenced) and with no meaningful assets in this district. The alleged debtor's choice of forum, made in May of last year, should be applied. And the interests of justice and convenience, including application of the Section 1412 factors identified in *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979), mandate transferring the case to the Northern District of Illinois, Eastern Division. Chief Judge Cox is already far up the learning curve, familiar with the debtor, the facts, the context, the issues, and the debtor's prior

[2] Exhibit 2, Order Granting Motion to Dismiss and Refiling Bar, July 17, 2026, *In re Green Sapphire I*. The Illinois Case was reopened on September 2, 2026. Exhibit 3, Show Cause Order Granting Motion to Reopen.

positions and conduct. Global Capital respectfully requests the Court to transfer this case to the Northern District of Illinois.

## FACTUAL BACKGROUND[3]

### A. Green Sapphire

5. Green Sapphire is a holding company controlled by A.R. Thane Ritchie. Ritchie is a wealthy former hedge fund principal turned private investor who now largely operates overseas. 355 A.3d at 134. Ritchie manages his personal investments through a network of interconnected trusts, holding companies, and other entities that make up his "Family Office." *Id.* at 134-136. Ritchie has a well-documented history of bad faith litigation misconduct, including in the Court of Chancery and Illinois Bankruptcy cases preceding this action.[4] In 2008 Ritchie settled securities fraud charges with the U.S. Securities and Exchange Commission, paying approximately $32 million in fines.[5] He has since expatriated from the United States.

6. Green Sapphire primarily holds investments in single purpose entities that own real estate. 355 A.3d at 135. None of its real estate holdings are located in the Northern District of Texas.

7. The Ritchie family office has centralized its accounting, administrative, legal, and other professional services functions within a wholly owned entity called 60 Degrees Group SEZC,

---

[3] The factual background of Green Sapphire and the Ritchie Family Office operations, and the disputes and litigation which have led to this case, is set forth in the Delaware Court of Chancery's March 13, 2026 Post-Trial Opinion in *Global Capital Partners, LLC v. Green Sapphire Holdings Inc.*, 355 A.3d 120 (Del. Ch. 2026). A copy of the Post-Trial Opinion is attached as Exhibit 4. The background is also set forth in Global Capital's *Motion to Dismiss the Green Sapphire Lawyers' Involuntary Petition for Bankruptcy Against Green Sapphire Holdings, Inc., and Opposition to the Green Sapphire Lawyers' Motion to Enforce the Automatic Stay* (ECF 11).

[4] *See, e.g.,* Ex. 2 at 3-4, 9; 355 A.3d at 153-155, 185-187.

[5] *See In re Ritchie Capital Management L.L.C., Ritchie Multi-Strategy Global Trading, Ltd.,* A.R. Thane Ritchie, and Warren Louis DeMaoi, SEC Administrative Proceeding File No. 3-12947, February 8, 2008, available at https://www.sec.gov/files/litigation/admin/2008/33-8890.pdf.

Ltd. ("60 Degrees" or the "Back Office"). *Id.* "The Back Office serves as the central nervous system for Ritchie's sprawling empire." *Id.*

8. On May 14, 2025, Green Sapphire filed a Chapter 11 bankruptcy petition in the Northern District of Illinois. Green Sapphire's petition stated that its address and principal place of business is 18 West 140 Butterfield Road, Suite 1500, Oakbrook Terrace, Illinois 60181. Ex. 1.

9. On June 22, 2026, less than a month before this case was commenced, Green Sapphire filed a motion for leave to file a Fourth Amended Complaint in an action in the Northern District of Illinois, a case in which Green Sapphire and other entities and directors from the Ritchie Family office bring many if not all of the same "non-Delaware" claims that the petitioning creditors say this case is needed to assert.[6] The Fourth Amended Complaint pleads that Green Sapphire "is a Delaware corporation with its principal place of business in Illinois."[7]

10. Green Sapphire is registered to do business with the Illinois Secretary of State.[8] Green Sapphire has a registered agent for service of process in Chicago. Ex. 6. Green Sapphire is not registered with the Texas Secretary of State and does not have a registered agent for service of process in Texas. *Id.*

---

[6] Exhibit 5, Motion by Plaintiffs Alpha Carta, Ltd., Breakers Beach Club, Ltd., Green Sapphire Holdings, Inc., NorthSea, LLC, Pradera PTC, LLC, Prairie Private Trust Company Ltd., Terra Carta Partners, LLC, Paul Schroth Wolfe for leave to file Fourth Amended Complaint, June 22, 2026 (*Wolfe, et al. v. Looper, et al.*, N.D. Ill. Case 1:24-cv-01538).

[7] Ex. 5 at Exhibit A, Proposed Fourth Amended Complaint, ¶ 7.

[8] Exhibit 6, printout of pages from the Illinois Secretary of State website and the Texas Secretary of State website, downloaded September 6, 2026.

11. Garret Vail and Paul Wolfe are Green Sapphire's two directors. Both reside in Illinois. Vail lives at 760 Summit Ave., Lake Forest, Illinois 60045, and Paul Wolfe lives at 1721 Shire Court, Wheaton, Illinois 60189.[9]

12. Timothy Yuskus, also a resident of Illinois, manages 60 Degrees.[10] 60 Degrees is a Delaware entity with a principal address of 122 N Wheaton Ave #140, Wheaton, Illinois 60187.[11] Green Sapphire "effectively had an office through 60 Degrees."[12] 60 Degrees provides bookkeeping, "accounting services," "directorship services," and "financial oversight" to Green Sapphire and the other Ritchie Family Office entities.[13] Ritchie's own website features an image of the Chicago skyline and thoroughly describes Mr. Ritchie's and his various businesses' connections to Chicago.[14]

**B. Prelude to the Illinois Bankruptcy Case—the Underlying Global Capital-Green Sapphire Dispute**

13. In 2023, with Ritchie's family office facing a "significant liquidity crunch," Global Capital loaned $10 million to Green Sapphire. 355 A.3d at 139-142, 144-145. When the loan came due on June 16, 2023, Green Sapphire failed to pay. *Id.* at 147. After an amendment and months of negotiations, on February 7, 2024 the parties entered into a Loan Settlement Agreement (the "LSA"), pursuant to which Green Sapphire agreed to transfer to Global Capital certain collateral, including ownership of Access Management S.A.S. ("Access Management"), a special

---

9 Exhibit 7, Debtor's Statement of Financial Affairs, June 24, 2025, *In re Green Sapphire I* at 11.

10 Exhibit 8, Transcript of the deposition of Timothy Yuskus, August 8, 2025 at 74:20–24.

11 Exhibit 9, printout of pages from the Illinois Secretary of State website, downloaded September 6, 2026

12 Ex. 8 at 92:23-94:5.

13 355 A.3d at 135; Ex. 8 at 16:8-11, 17:11-14, 70:6–11, 83:19–20.

14 *See* Exhibit 10.

purpose entity that holds luxury real estate in St. Barthélemy valued at approximately $17.5 million. *Id.* at 149-150, 169.

14. Green Sapphire repudiated the LSA shortly after executing it, and filed a civil suit and criminal complaint in the islands accusing Global Capital of fraud and seeking to claw back the collateral. *Id.* at 152-153. On August 22, 2024, Global Capital sued Green Sapphire in the Delaware Court of Chancery seeking specific performance of the LSA. In early 2025 Green Sapphire's affiliate in the family office, Alpha Carta, intervened in the action to pursue collusive "fraudulent transfer" claims by falsely portraying itself to the Court of Chancery as an unsecured creditor of Green Sapphire. *Id.* at 176-180. Then, after discovery deadlines were repeatedly ignored, Green Sapphire stopped paying its counsel. *Id.* at 154. Counsel sought to withdraw, and the Court of Chancery ordered Green Sapphire to find substitute counsel by September 16, 2025. *Id.*

**C. The Illinois Bankruptcy Case**

15. On May 14, 2025—just two days before the deadline to find substitute counsel in the Delaware action—Green Sapphire filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 25-07412 (the "Illinois Bankruptcy Case"). Ex. 2 at 2. The case was assigned to the Honorable Jacqueline P. Cox, Chief Judge of the court.

16. The Illinois Bankruptcy Case was actively litigated for over fourteen months. Among the significant proceedings—including those in the concurrent Delaware action:

- Global Capital moved to dismiss the Illinois Bankruptcy Case and for relief from the automatic stay to permit the Court of Chancery case to proceed.
- After discovery and a deposition, on June 18, 2025, Judge Cox granted Global Capital's motion for relief from the automatic stay so that the Delaware Court of

Chancery could decide whether the property in issue was property of the bankruptcy estate. Ex. 2 at 3-4. The motion to dismiss was continued pending the trial in the Delaware Court of Chancery.

- Discovery in Delaware was held and the assistance of a discovery magistrate was required to get Green Sapphire to produce documents. Repeated motions practice was required to get through discovery, including motion practice to get the deposition of Ritchie, as discussed in the Court of Chancery opinion, and Green Sapphire twice improperly removed the case to federal court in Delaware (without disclosing lift stay relief had already been granted in the Illinois Bankruptcy Case) only to have it remanded twice. Finally, on August 20, 2025, trial and continuing over three days of trial was held in the Delaware Court of Chancery. 355 A.3d at 154-155. There was also extensive post-trial briefing.
- On March 13, 2026, the Delaware Court of Chancery issued a 120-page Post-Trial Opinion finding that Global Capital was the sole "rightful owner" of Access Management and the St. Barthélemy properties. *Id.* at 188. The Court of Chancery also made findings that Green Sapphire had engaged in "egregious litigation misconduct," acted with Alpha Carta to file collusive claims, made "recklessly misleading or knowingly false allegations," and sought to "delay and derail" the Delaware litigation by "tactically fil[ing] for bankruptcy." *Id.* at 186-189.
- On April 14, 2026, the Court of Chancery entered Final Judgment in favor of Global Capital, declaring Global Capital the sole rightful owner of Access Management and ordering Green Sapphire to transfer all ownership, control, and authority to Global Capital. The Final Judgment also permanently enjoined Green Sapphire

from "asserting any rights to ownership or control over" them. Ex. 11 at ¶ 3.a. Green Sapphire also was found liable to Global Capital for a monetary judgment of $8.6 million in damages and attorney fees.[15]

- Four days after final judgment was entered, on April 17 Green Sapphire filed a motion in the Illinois Bankruptcy Case to void the Final Judgment.[16] On June 16, 2026, Judge Cox denied the motion, finding it "utterly baseless."[17]
- On June 23, 2026, the Delaware Court of Chancery held Ritchie, Vail and Wolfe in contempt of court for failing to comply with the Final Judgment.[18]
- On May 29, 2026, Green Sapphire filed an adversary complaint against Global Capital in the Illinois Bankruptcy Case, seeking to re-litigate the issues resolved after trial by the Court of Chancery and making related claims against numerous other defendants.[19] On June 2, Global Capital moved to dismiss the adversary proceeding with prejudice. In the Order dismissing the bankruptcy proceeding as filed in bad faith, the court ordered that "[o]n Tuesday, July 20, 2026, the Debtor has to show cause why adversary proceeding 26¬00370 should not be dismissed."[20] Ex. 2 at 9. Green Sapphire filed nothing in opposition. On July 21, 2026, Judge Cox held a hearing on Global Capital's motion to dismiss Green Sapphire's

---

[15] Exhibit 11, Order and Final Judgment, April 14, 2026, *Court of Chancery Case*.

[16] Exhibit 12, Motion for Entry of a Rule to Show Cause, to Enjoin and Void Delaware Final Order and Shorten Notice, April 17, 2026, *In re Green Sapphire I*.

[17] Exhibit 13, Hearing Transcript, June 16, 2026, *In re Green Sapphire I* at 17:10-16 (motion "utterly baseless," with "no legal authority" for the relief sought and no legal or factual basis); Exhibit 14, Order Denying the Motion for Entry of a Rule to Show Cause, June 22, 2026, *In re Green Sapphire I* at 1-2.

[18] Exhibit 15, Memorandum Addressing Contempt, June 23, 2026, *Court of Chancery Case*.

[19] Exhibit 16, Adversary Complaint, May 29, 2026, *In re Green Sapphire I*.

[20] Ex. 2 at 9.

adversary proceeding, during which Green Sapphire sought additional time to oppose the motion—and made no mention that the petition in this case was being filed at that very moment. *See* Dkt. 123. Green Sapphire subsequently voluntarily dismissed the Adversary Complaint, and the motion to dismiss with prejudice remains unopposed and *sub judice* at this time.

- There was other contested motion practice in the Illinois Bankruptcy case, including an application by Green Sapphire to employ counsel Anthony J. Peraica, an Illinois law firm that appeared in the attempted removals in Delaware, for purposes of the Chancery Court action.[21]

17. Throughout this period, the Illinois Bankruptcy Court received Green Sapphire's schedules, statements of financial affairs, and monthly operating reports under penalty of perjury. Green Sapphire has assets totaling approximately $22 million.[22] Payment of Global Capital's $8.6 million claim would leave Green Sapphire with $13.4 million in assets to pay all debts, far more than is needed to pay the claims of the petitioners here (if they are valid) and the debts reported in the Illinois Bankruptcy Case and the instant petition.[23] Additionally, Green Sapphire recently reported a cash balance of $296,908.[24] Even if some of the listed assets were not immediately liquid, they could be sold or pledged as collateral to pay creditors in full.

---

[21] Exhibit 17, Order Denying Application to Employ, October 14, 2025, *In re Green Sapphire I*.

[22] In the Illinois Bankruptcy Case, Green Sapphire most recently reported total assets of $39.2 million. Exhibit 18, Monthly Operating Report, June 21, 2026, *In re Green Sapphire I* at 2. Green Sapphire ascribes $17.5 million of that amount to the St. Barts real properties. Exhibit 19, Schedule A/B: Assets—Real and Personal Property, October 30, 2025, *In re Green Sapphire I* at 2. Because the St. Bart's real properties belong to Global Capital, Green Sapphire's actual assets total $22 million.

[23] In the Illinois Bankruptcy Case, Green Sapphire disclosed $2.63 million in third-party debts. Ex. 19 at 10, 12-14 (Green Sapphire reporting that unsecured creditors hold claims with known amounts totaling $2,480,000 and that one secured creditor holds a claim of $150,000).

[24] Ex. 18.

**D. Dismissal for Bad-Faith Filing and the One-Year Refiling Bar**

18. On July 17, 2026, Judge Cox dismissed the Illinois Case for cause pursuant to 11 U.S.C. § 1112(b), finding that Green Sapphire had filed for bankruptcy in bad faith. Judge Cox held that the case "was filed in bad faith to interfere with the Chancery Court." "The Debtor's focus herein has not been to reorganize or to pursue other proper bankruptcy goals and objectives but to continue to litigate issues now resolved by the Delaware Court." Ex. 2 at 9. Judge Cox further barred Green Sapphire from refiling for one year. *Id.* at 10.

**E. The Petition in This Case**

19. Just two business days after Judge Cox's dismissal order, the instant involuntary petition was filed against Green Sapphire. The petition was filed at 2:02 p.m. Central Time on July 22, 2026, just before a 3:15 p.m. Eastern Time hearing in the Delaware Court of Chancery to consider Global Capital's motion for the appointment of a receiver.[25] The filing was rushed to avert an appointment of a court-designated receiver by the Delaware Court of Chancery for Green Sapphire, a Delaware corporation.[26]

20. The initial petitioning creditors were lawyers representing Green Sapphire or Ritchie Family Office entities: Legamaro Banipal LLP, a firm in Chicago, Illinois; lecocqassociate, a firm in Geneva, Switzerland, and Charles-Hubert Vanoverberghe, an attorney in Paris, France. They collectively assert alleged claims for unpaid legal fees totaling $174,784.66. ECF 1 at 3-4. Subsequently, on August 15, 2026, the Lazareff Le Bars firm filed two separate claims and joined the petition. It asserts claims totaling $793,860.[27]

---

[25] Exhibit 20, Order Setting Hearing, July 20, 2026, *Court of Chancery Case*.

[26] Exhibit 21, Transcript of Proceedings at Status Conference, Aug. 18, 2026, at 6:22-7:2, 21:2-7.

[27] ECF 25 at 2; ECF 27 at 2.

21. The petitioning Green Sapphire Lawyers did not attempt to collect the amounts they claim to be owed before commencing this action. None of the firms filed state court or federal actions to obtain payment before the Illinois Bankruptcy Case. None of the firms filed claims in the Illinois Bankruptcy Case. None of the firms sought to obtain payment before commencing this case. Indeed, in the document productions made in this case, no demands for payment on Green Sapphire have been produced by any party. The Lazareff firm continues actively representing and doing new work for Green Sapphire and the Ritchie Family Office today. Only lecocqassociate and Vanoverberghe appeared on the schedule of creditors in Illinois. Permission was not sought from the Illinois Bankruptcy Court to retain any of the firms.

22. In total, the Green Sapphire lawyers pursuing this case assert claims for $968,644.66.[28] Green Sapphire could pay all three original petitioning creditors ($174,784.66) from its cash balance on June 22, 2026, which was $296,908.[29] Green Sapphire's $13.4 million in available assets *after* it pays Global Capital is more than three times what is needed to pay the Green Sapphire Lawyers and all third-party debts in the Illinois Case.[30] The obvious purpose of the filing, as reflected by the race to the courthouse to file which Green Sapphire admitted at the status conference, was to avoid the appointment of a receiver by the Delaware Court of Chancery.[31]

**F. Reopening of the Illinois Case**

23. On August 21, 2026, Global Capital filed a motion to reopen the Illinois Bankruptcy Case. On September 1, 2026, the court granted the motion and reopened the case. Ex. 3. The

---

[28] Some of the asserted claims may be overstated or not the responsibility or at least the sole responsibility of Green Sapphire. Several of the law firms are representing multiple Ritchie Family Office entities, not just Green Sapphire.

[29] Ex. 18 at 2.

[30] Ex. 18 at 2; Ex. 19 at 10, 12-14.

[31] Ex. 21 at 6:22-7:2, 21:2-7; *see also* 12:16-21.

court denied a motion to continue the matter and scheduled further proceedings for September 30, 2026. *Id.*

## ARGUMENT

### I. Venue Is Not Proper in the Northern District of Texas

24. A bankruptcy case may be commenced in a district in which the debtor has its "domicile, residence, principal place of business in the United States, or principal assets" for the 180 days preceding commencement or the best part of that 180 day period. 28 U.S.C. § 1408(1). Where venue is improper, the Court may transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Green Sapphire's domicile, its principal place of business and its principal assets are not located in the Northern District of Texas.

#### A. Green Sapphire Is Not Domiciled in Texas and Does Not Have Its Principal Place of Business in Texas.

25. Green Sapphire is incorporated in Delaware, and thus is domiciled in that state. *In re ERG Intermediate Holdings, LLC*, 2015 WL 6521607, at *4 (Bankr. N.D. Tex. Oct. 27, 2015) (a business entity is domiciled in the state of its organization).

26. In its May 2025 Illinois Chapter 11 petition, Green Sapphire listed its business address as 18 West 140 Butterfield Road, Suite 1500, Oakbrook Terrace, Illinois 60181. Ex. 1. It maintained that representation throughout the fourteen months the Illinois Bankruptcy Case was pending. Green Sapphire's proposed Fourth Amended Complaint in the Northern District of Illinois, filed just a month before the petition here, pleads that Green Sapphire "is a Delaware corporation with its principal place of business in Illinois."[32] Green Sapphire is registered to do business with the Illinois Secretary of State and has a registered agent for service of process in

[32] Ex. 5 at Exhibit A, Proposed Fourth Amended Complaint, ¶ 7.

Chicago.[33] Green Sapphire is not registered with the Texas Secretary of State and does not have a registered agent for service of process in Texas. *Id.* Green Sapphire's directors reside in Illinois.[34] Green Sapphire "effectively had an office through 60 Degrees," the Back Office for Green Sapphire and the rest of the Ritchie Family Office, and 60 Degrees is a Delaware entity with a principal place of business in Wheaton, Illinois 60187.[35]

27. A corporation's "principal place of business" is wherever the corporation's "nerve center" is—the place where "a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). That is Illinois. When applying the "nerve center" test, courts determine where the alleged debtor's significant business decisions are made. *In re Peachtree Lane Assocs., Ltd.*, 198 B.R. 272, 281 (Bankr. N.D. Ill. 1996). There is no evidence that Green Sapphire's significant business decisions have ever been made in the Northern District of Texas. To the extent that Green Sapphire's directors Garret Vail and Paul Wolfe are making decisions, they reside in Illinois.

**B. Green Sapphire's Principal Assets Are Not in the Northern District of Texas.**

28. Green Sapphire's director testified that "all of" Green Sapphire's assets were "identified on the schedule statements and related documents" in the Illinois Bankruptcy Case.[36] Green Sapphire's schedules in the Illinois Case disclosed total assets of approximately $39.2 million, of which approximately $17.5 million consisted of real property in St. Barthélemy that

---

[33] Ex. 6.

[34] Ex. 7 at 11.

[35] Ex. 8 at 92:23-94, 74:20–24; Ex. 9. The petition in this case identifies Green Sapphire's address as 3500 Oak Lawn Ave., Ste. 460, Dallas, Texas 75219. ECF 1. There are no Dallas landlords or workspace locations listed in Green Sapphire's schedules of creditors in the Illinois Bankruptcy Case. 3500 Oak Lawn Ave., Ste. 460, Dallas, Texas 75219 appears to be a flexible shared workspace location. *See* https://www.officeevolution.com/locations/usa/texas/turtle-creek/; https://www.alliancevirtualoffices.com/virtual-office/us/tx/dallas/oak-lawn-ave-6207

[36] Exhibit 22, Transcript of First Meeting of Creditors, June 25, 2025, at 9:3-7.

has been determined in unappealed decisions of the Illinois Bankruptcy Court not to be property of Green Sapphire's.[37] Setting aside the St. Barthélemy properties, Green Sapphire has approximately $22 million in assets, most of which is a number of parcels of real estate held through special purpose entities. This real estate is located in Williamson and Hays Counties in Texas and in Idaho. None of it is located in the Northern District of Texas.

29. The bankruptcy schedules filed in the Illinois Bankruptcy Case disclose no assets in this District except possibly for $29,017.98 in checking accounts at Dominion Bank and MapleMark Bank, which have offices in Dallas.[38]

30. Thus none of the elements required to commence an action in this district are met.

## II. The Interests of Justice and Convenience of the Parties Favor Transfer to the Northern District of Illinois.

31. Bankruptcy Rule 1014(a)(2) provides:

> *Cases Filed In Improper District*. If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

### A. The Debtor's 2025 Choice of Forum is Entitled to Great Weight.

32. Under 28 U.S.C. § 1412 and Bankruptcy Rule 1014, courts have discretion to transfer a case to another district "in the interest of justice or for the convenience of the parties." *See* 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014 (same). Section 105(a) of the Bankruptcy Code permits a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title." 11 U.S.C. § 105(a). Public policy with respect to core bankruptcy

[37] Exs. 1, 13, 14, 18 and 19; *see also* Ex. 11.

[38] Ex. 19 at 1-2.

matters, such as those here, "favors the centralization of bankruptcy proceedings in the bankruptcy court where the debtor's bankruptcy case is pending." *In re Manchester, Inc.*, 417 B.R. 377, 384 (Bankr. N.D. Tex. 2009).

33. The alleged debtor, Green Sapphire, made its forum election on May 14, 2025, when it filed the petition in the Illinois Bankruptcy case. Under 28 U.S.C. §§ 1408 and 1412, a "debtor's choice of forum is entitled to great weight if venue is proper." *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002); *see also Matter of Peachtree Lane Associates, Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998) (district where debtor filed its Chapter 11 bankruptcy, the Northern District of Illinois, is presumed to be proper). A "debtor's choice of forum should rarely be disturbed." *In re Uslar,* 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991); *In re Holmes*, 306 B.R. 11, 14 (Bankr. M.D. Ga. 2004) (presumption based on "paramount consideration of speedy and economic administration of the bankruptcy case"). Green Sapphire first initiated its voluntary petition in the Northern District of Illinois, where it has its principal place of business and is registered. That choice should be enforced here by transferring the case to the Northern District of Illinois under 28 U.S.C. § 1412 and Bankruptcy Rule 1014.

34. *In re Cox Operating, LLC*, 652 B.R. 49, 55 (Bankr. E.D. La. 2023) is instructive. An involuntary case was filed in the bankruptcy court in the Eastern District of Louisiana. The debtor separately filed a voluntary case in the Southern District of Texas. Faced with "competing petitions," the court found that "the debtors' choice of forum is entitled to enough deference to support a finding that, in the interest of justice," the involuntary case should be transferred. *Id.* at 59; *see also In re: 777 Partners LLC, Debtor*, 2026 WL 2479914, at *5 (Bankr. S.D. Fla. Aug. 24, 2026) (acknowledging the deference "due a debtor's first-filed forum" and analyzing transfer under Rule 1014(b) in transferring case to forum of debtor's voluntary petition).

35. The court in *In re Cox* considered the interests of justice and the efficient administration of the estate as paramount, including "'the integrity of the Bankruptcy Court system.'" *Id.* at 57 (citing *In re Enron Corp.*, 274 B.R. at 349 and quoting *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012)).[39]

36. Retaining the instant case would not promote the interests of justice or the efficient administration of the estate. As stated in *In re Cox*:

> [T]he decision to retain the putative debtor's case and administer its affiliates' cases in this district carries with it the enormous risk of fostering a perception that the decision was made solely to advantage the Petitioning Creditors over all other stakeholders—and that is a risk this Court is not prepared to take. It is the Court's sincere view that, given the contours of this particular case, any determination that this district is the venue in which the bankruptcy cases of Cox Operating and its six affiliates should proceed would only serve to breed mistrust in the Court's evenhandedness and the bankruptcy process itself, thereby jeopardizing the opportunity to conserve and protect the value remaining in these estates to the detriment of all creditors.

*In re Cox*, 652 B.R. at 59.

37. Green Sapphire's first bankruptcy case was pending in the Northern District of Illinois for over fourteen months—from May 14, 2025, through July 17, 2026. Chief Judge Cox is already up the learning curve. She knows the debtor. She has received financial disclosures, statements of financial affairs, and monthly operating reports. She is familiar with the facts and the context of Green Sapphire.

---

[39] The court also considered the convenience of the parties, as is required, noting that this factor is of slightly less import given modern litigation practices, such as remote hearings, law firms with multiple offices, convenient and accessible airports, and the accessibility of electronic information. *See In re Cox*, 652 B.R. at 57. The Court's transfer analysis should "'focus on the interests and convenience of all parties, not just those of the [Petitioning Creditors].'" *Id.* at 59 (quoting *In re Patriot Coal Corp.*, 482 B.R. at 750).

38. "Consolidating the dispute into a single forum with the Bankruptcy Cases reduces the risk of conflicting rulings and promotes judicial efficiency by allowing the court that is already familiar with the facts to preside." *Clark v. Stout Risius Ross, LLC*, 2026 WL 686164, at *3 (N.D. Tex. Mar. 11, 2026). Requiring another judge in another district to duplicate this learning from scratch would be a profound waste of judicial resources and would only serve the interests of the petitioning creditors and Green Sapphire—*i.e.*, those who seek to evade both the Delaware Court of Chancery and Illinois Bankruptcy Court's prior rulings.

**B. The Section 1412 Factors Also Warrant Transfer to the Northern District of Illinois.**

39. Transfer is warranted under 28 U.S.C. 1412's transfer analysis for core proceedings.

40. "Courts engage in a factor-driven analysis in assessing which venue is most convenient and which best serves the interest of justice." *In re Schouten*, 657 B.R. 531, 537 (Bankr. N.D. Tex. 2024). The following factors are to be considered: "(1) the proximity of creditors of every kind to the Court; (2) the proximity of the bankrupt (debtor) to the Court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if bankruptcy should result." *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979). "[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate." *Id*. Each factor here indisputably favors transfer.

41. ***Proximity of the Creditors***. The petitioning creditors have no meaningful connection to Dallas:

- Charles-Hubert Vanoverberghe is located in Paris, France. ECF 1 at 4.

- lecocqassociate (Dominique Lecocq) is located in Geneva, Switzerland. *Id.* at 3.
- Lazareff Le Bars Legal Advisory Limited (ADGM) is located in Abu Dhabi, United Arab Emirates, ECF 25 ¶ 4, or Paris, France. ECF 27 ¶ 4.
- Lazareff Le Bars SARL is located in Paris, France. ECF 26 ¶ 4.
- Legamaro Banipal LLP, the only petitioning creditor in the United States, is located in Chicago, Illinois. ECF 1 at 4.

42. The Illinois Bankruptcy Case includes over 20 unsecured creditors, located throughout the United States and abroad, but several based in Illinois. One of Green Sapphire's secured creditors with a $150,000 claim is Yorkville Investment I, LLC, located in Plainfield, Illinois. Ex. 7 at 10. At least two other unsecured creditors in the Illinois Case are located in Chicago, Illinois. *Id.* at 12, 14. Only one of the unsecured creditors is located in the Northern District of Texas. *Id.* at 13.

43. ***Proximity of the Alleged Debtor***. Green Sapphire's address and principal place of business is 18 West 140 Butterfield Road, Suite 1500, Oakbrook Terrace, Illinois 60181. Ex. 1 at 1. "It is elementary to conclude that the debtor is closer in proximity to a court in its home district," the Northern District of Illinois, Eastern Division, "than to this district." *In re Pope Vineyards*, 90 B.R. 252, 256 (Bankr. S.D. Tex. 1988).

44. ***Proximity of the Witnesses Necessary to the Administration of the Estate***. Green Sapphire's Back Office is in Wheaton, Illinois. Its directors reside nearby. The manager of its Back Office, who functions as its financial officer, resides nearby.[40]

45. ***Location of the Assets***. As discussed above in Argument Section I(B), Green Sapphire's principal assets are real estate is located in Williamson and Hays Counties in Texas and

---

[40] Ex. 7 at 11; Ex. 8 at 92:23-94, 74:20–24; Ex. 9.

in Idaho. Its principal assets are not located in the Northern District of Texas or in the Northern District of Illinois.

46. ***Economic Administration of the Estate***. Allowing this case to proceed here rather than in the Northern District of Illinois would "be contrary to efficient administration of this estate." *In re Pope Vineyards*, 90 B.R. at 259. Public policy, and efficient administration of the estate weigh heavily in favor of transfer to the Northern District of Illinois. *See In re Manchester, Inc.*, 417 B.R. at 384. This case was filed less than two months ago. The Illinois Bankruptcy Case has been proceeding since May, 2025. Transferring this case to the Northern District of Illinois would allow the judge with the most knowledge and experience regarding these disputes to continue presiding, promoting consistency and preventing wasteful duplication of effort. "Little will be lost" by removal of this case from this district, and the Green Sapphire Lawyers "will not be adversely affected" by transfer to Illinois. *In re Interlink Home Health Care, Inc.*, 283 B.R. 429, 441 (Bankr. N.D. Tex. 2002). "Indeed, there is obvious advantage to having all cases and adversary proceedings pending in the same court." *Id.*

47. ***Necessity for Ancillary Administration***. This factor is likely *de minimis* here. The Green Sapphire Lawyers are claiming less than $1 million, while Green Sapphire has disclosed significant assets that easily would cover the petitioners here as well as all other creditors. If bankruptcy should result, and liquidation occur, the reopened Illinois Case has a paramount interest. *See In re Pope Vineyards*, 90 B.R. at 259.

## CONCLUSION

48. For these reasons, Global Capital respectfully requests the Court to grant its Motion and enter an order transferring this case to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1406, 1408 and 1412, and Rule

1014 of the Federal Rules of Bankruptcy Procedure, and granting such other and further relief as this Court deems just and proper.

Dated: September 9, 2026

**DENTONS US LLP**

*/s/ Spencer D. Hamilton*

Spencer D. Hamilton
Texas Bar No. 24087656
DENTONS US LLP
100 Crescent Court, Suite 900
Dallas, Texas 75201
Tel: (214) 259-0900
Email: spencer.hamilton@dentons.com

Kenneth J. Pfaehler (*pro hac vice*)
Nicholas W. Petts (*pro hac vice*)
DENTONS US LLP
1900 K Street N.W.
Washington, D.C. 20006
Tel: (202) 408-6468
Email: kenneth.pfaehler@dentons.com
nicholas.petts@dentons.com

Robert E. Richards (*pro hac vice*)
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel: (312) 876-7396
Email: robert.richards@dentons.com

Kevin McCullough
ROCHELLE MCCULLOUGH
Texas Bar No. 00788005
901 Main Street
Suite 3200
Dallas, Texas 75202
Tel: (214) 953-0182
Email: kdm@romclawyers.com

*Counsel to Global Capital Partners, LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the foregoing on all counsel of record via the Court's CM/ECF System on September 9, 2026.

By: */s/ Spencer D. Hamilton*
Spencer D. Hamilton