Brandon J. Tittle
Texas Bar No. 24090436
Manolo R. Santiago
Texas Bar No. 24129258
**TITTLE SANTIAGO, PLLC**
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316
Email: btittle@tittlesantiago.com
Email: msantiago@tittlesantiago.com

**COUNSEL FOR PETITIONING CREDITORS**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 26-33254** |
| **GREEN SAPPHIRE HOLDINGS INC.,** | § | |
| | § | **Chapter 11** |
| **Alleged Debtor.** | § | |

**PETITIONING CREDITORS' EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY GLOBAL CAPITAL PARTNERS, LLC SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE AUTOMATIC STAY CONFIRMED ON SEPTEMBER 1, 2026, AND FOR RELATED RELIEF**

lecocqassociate; Legamaro Banipal LLP; Charles-Hubert Vanoverberghe; Lazareff Le Bars Legal Advisory Limited (ADGM); and Lazareff Le Bars SARL (collectively, the "Petitioning Creditors") move under 11 U.S.C. §§ 105(a) and 362 and Federal Rules of Bankruptcy Procedure 9013, 9014, and 9020 for an order requiring Global Capital Partners, LLC ("Global") to show cause concerning its affirmative pursuit of contempt relief against Green Sapphire Holdings Inc. ("Green Sapphire") in Chicago on September 1, 2026, after this Court's stay ruling that morning. In support, the Petitioning Creditors state:

## PRELIMINARY STATEMENT

1. This motion presents the question the Court expressly reserved on September 1st. The Court confirmed that the automatic stay was in effect, reminded Global to seek permission

rather than forgiveness, and warned that Global would proceed in Chicago at its own peril. Global's counsel acknowledged that the Court's statements were "received and heard." That afternoon, Global affirmatively sought an order requiring Green Sapphire to answer contempt allegations arising from the Texas involuntary filing. Ex. A, Tr. 33:3–21, 35:16–17; Ex. B, Tr. 3:11–24, 10:20–11:20.

2. The challenged conduct was more than appearing in another courtroom or reopening a docket. After the Texas ruling was again brought to its attention in Chicago, Global opposed postponing the show-cause request and obtained compulsory process enforcing the July 17, 2026, refiling-bar order against Green Sapphire. The resulting order required an in-person appearance to answer those allegations and preserved Global's request for its own fees and expenses. Ex. B, Tr. 7:18–8:23, 10:20–11:20, 17:8–21; Ex. C ¶¶ 2–4. The Petitioning Creditors contend that this affirmative enforcement violated the stay that this Court had just confirmed.

3. The Court did not enjoin Judge Cox, forbid every Chicago appearance, or decide in advance that reopening would violate the stay. The Petitioning Creditors do not ask the Court to rewrite that ruling. They ask it to examine **what Global actually requested and obtained after the warning**, determine whether that conduct was stayed rather than protected by § 362(b)(4), and apply the governing civil-contempt standard to the developed record. Ex. A, Tr. 33:9–21, 34:1–10, 35:9–13.

4. An order to show cause will provide the process the September 1 ruling contemplated: specific notice to Global, a response identifying its asserted authority and defenses, and an evidentiary hearing before any finding of contempt or monetary liability. If the Court finds a stay violation but concludes that objective uncertainty precludes retrospective contempt, it should

still define the stay's application prospectively. The requested relief runs against Global alone, not the Chicago court, and does not seek criminal punishment or automatic sanctions against counsel.

**JURISDICTION AND PROCEDURAL BASIS**

5. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. Determining the scope and enforcing the automatic stay arising in this case is a core bankruptcy matter. Section 105(a) authorizes process necessary or appropriate to carry out the Code, including properly limited civil-contempt relief. *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612–13 (5th Cir. 1997). Rule 9020 directs that a contempt motion by a party in interest proceed under Rule 9014.

6. The Petitioning Creditors invoke their interests as creditors pursuing a collective bankruptcy remedy and as the filers whose conduct Global placed at issue in the Chicago enforcement proceeding. Global expressly attacked the independence and legitimacy of their filing decisions, while asserting that one joining creditor could not participate in Chicago. Ex. D ¶¶ 1–4, 50–56; Ex. B, Tr. 17:8–21. Their request concerns enforcement of this case's stay, not an assertion that § 362 independently stays every proceeding against a nondebtor or makes them representatives of Green Sapphire.

7. Participation in stay enforcement and entitlement to a damages award are distinct. The Petitioning Creditors seek an order to show cause and a determination of Global's obligations; any monetary recovery must rest on a claimant-specific legal basis and proof of direct injury. They do not seek damages belonging to Green Sapphire or its estate without that party's participation and authority. The limits identified in *Ayers v. Neugebauer*, No. 25-10572, slip op. at 4–5 & n.2 (5th Cir. July 16, 2026), are addressed below.

# FACTUAL BACKGROUND

## A. The Prior Motion Put Global on Notice of the Precise Stay Dispute.

8. The involuntary petition was filed on July 21, 2026. On August 21, Global filed its Chicago motion to reopen and enforce the July 17 dismissal and refiling-bar order in Case No. 25-07412, Docket No. 145 (the "Chicago Motion"). It requested a show-cause order against Green Sapphire and an award of Global's fees and costs. Ex. D at 1, 15, ¶¶ 1, 56. Paragraph 28 expressly characterized the requested relief as relief to which Global, a judgment creditor, would be entitled.

9. On August 24, the Petitioning Creditors filed their Emergency Motion to Determine and Enforce the Automatic Stay, Docket No. 43 (the "Prior Stay Motion"). It distinguished administrative reopening from enforcement of the refiling bar, contempt, fees, and findings that Green Sapphire orchestrated the creditors' Texas filing. It requested relief directed at Global rather than an injunction against Judge Cox. Ex. E at 1–4, 7–8. The present motion follows the hearing on that request and concerns the affirmative conduct that occurred afterward.

## B. The September 1st Ruling Confirmed the Stay and Reserved Subsequent Enforcement.

10. At the September 1st morning hearing, this Court stated that the stay was in place because § 362 expressly applies to a petition filed under § 303. Ex. A, Tr. 30:19–31:2. The Court then addressed Global's asserted § 362(b)(4) exception. It did not find *Cooper* and *Sabre* on point and explained that applying *Halo Wireless* to the particular facts was difficult. *Id.* 31:13–32:10. The Court did not conclusively decide that every aspect of the contemplated Chicago proceeding was either stayed or excepted.

11. The Court invoked *In re Chesnut* and the principle "ask for permission, not for forgiveness." It then explained: "I determined that the automatic stay absolutely exists and is in effect in this case," and warned that Global would "proceed at its own peril." If Global's conduct

in Chicago violated the stay, the Court would address it through a motion for violation of the stay. Ex. A, Tr. 33:3–17.

12. The Court expressly declined to enjoin the Chicago court or prejudge a violation, and stated that a motion to reopen was not necessarily violative of the stay. It nevertheless characterized Global's claimed governmental-actor position as "walking a very fine line" and repeated the warning. Ex. A, Tr. 33:9–34:10. Those qualifications delimit this motion: Global's later affirmative enforcement, not reopening by itself, is the conduct requiring examination.

13. The Court also reaffirmed that the same dates and deadlines applied and that dismissal on Global's motion would follow a full evidentiary hearing. Global's counsel responded: "No questions, Your Honor. And all of Your Honor's statements are received and heard." Ex. A, Tr. 35:4–17. The morning proceedings concluded at 12:12 p.m. Id. 35:23. The record thus establishes actual notice before the Chicago hearing scheduled for 1:00 p.m. Ex. B at 1.

**C. Global Then Pressed for Affirmative Contempt Process in Chicago.**

14. Global opened its Chicago presentation by requesting both reopening and an order requiring Green Sapphire to show cause why it should not be held in contempt for the allegedly collusive Texas filing. It asserted that its papers supplied the necessary prima facie showing. Ex. B, Tr. 3:11–24. Although Global described the request as involving no substantive decision that day, the relief it sought would require Green Sapphire to defend itself against an asserted violation of the prepetition refiling bar. *Id.* 4:1–24.

15. Debtor's counsel then advised Judge Cox that Judge Larson had confirmed the stay that morning and had reserved a later determination of any violation. Global participated in that exchange. Ex. B, Tr. 7:18–8:23. Afterward, Global opposed putting off the hearing or issuance of the show-cause order "in any way." *Id.* 10:20–11:10. Global could have limited its appearance to

reporting the Texas ruling or requesting time to clarify the stay. Instead, it pressed for immediate affirmative process.

16. Global agreed that the return date and evidentiary hearing in Chicago could follow September 14th, stating: "We pushed for the hearing on our motion to dismiss. We stand by that in Texas." Ex. B, Tr. 11:11–20. That concession concerning a later evidentiary date did not withdraw its request to issue the compulsory order immediately. Global subsequently emphasized that it sought contempt against Green Sapphire, not McNutt's firm, while disputing McNutt's entitlement to notice or participation. *Id.* 17:8–21.

17. Judge Cox denied the continuance and granted limited reopening. Ex. B, Tr. 19:5–13. The written order, Docket No. 153, was filed September 1 and entered September 2nd. It reopened the case to enforce the July 17th order and directed Green Sapphire to appear through a representative in person on September 30 at 2:00 p.m. to show cause concerning "having involuntary bankruptcy case 26-33254 filed" in Texas. Ex. C ¶¶ 2–3. It reserved Global's related fees, costs, and expenses and allowed written responses by September 20. Id. ¶¶ 4, 7. Those written deadlines, not the tentative times discussed orally, govern.

18. Paragraph 6 of the Chicago order states that no stay is in effect "in this Illinois Bankruptcy Case." Ex. C ¶ 6. The Petitioning Creditors acknowledge that language and Judge Cox's decision to proceed. They contend that the sentence does not expressly grant relief from the distinct stay arising from the later Texas petition. Its meaning and any reasonable reliance on the Chicago ruling must nevertheless be considered before retrospective contempt is imposed. Neither the transcript nor the order makes a final finding that the Petitioning Creditors colluded with Green Sapphire.

## RELIEF REQUESTED

19. The Petitioning Creditors request an order requiring Global to respond and appear through counsel at a separately noticed hearing to show cause why its September 1 procurement of compulsory contempt process against Green Sapphire, after this Court's ruling, should not be found to violate § 362 and warrant civil-contempt relief. The response should identify the precise conduct Global contends was permitted, the statutory exception or other authority asserted, and the basis for any claimed objective uncertainty. The Petitioning Creditors retain the burden of establishing their entitlement to relief.

20. After notice and hearing, the Petitioning Creditors request findings on the stay's application and, if the governing standard is satisfied, civil contempt; a clear direction that Global cease the specifically identified stayed enforcement unless lawful relief is obtained; and a procedure to establish any recoverable compensatory expenses. If necessary to remedy a proven violation, Global should be required to provide the resulting Texas ruling to the Chicago court and seek appropriate modification or continuation there through lawful procedures. This Court is not asked to vacate a sister court's order or direct that it be ignored.

21. Alternatively, if fair ground of doubt precludes retrospective contempt, the Court should determine the stay's application to the identified enforcement and enter precise prospective directions. The Petitioning Creditors request prompt scheduling before the September 20 response deadline and September 30 Chicago hearing, subject to current docket conditions and reasonable notice. They do not request automatic addition of a contempt trial to the September 14 setting, postponement of the pending involuntary petition, or relief under an unserved Rule 9011 motion.

## ARGUMENTS AND AUTHORITIES

**A. Affirmative Enforcement of the Prepetition Refiling Bar Requires a Stay Determination.**

22. Section 362(a)(2) stays enforcement against the debtor of a judgment obtained before commencement of the bankruptcy case, subject to statutory exceptions and applicable stay relief. Global's own motion sought to enforce the July 17 order, which preceded the July 21 Texas petition. Ex. D ¶¶ 1, 28–29, 55–56. The Chicago order expressly states the same enforcement purpose. Ex. C ¶ 2. The Petitioning Creditors therefore principally rely on § 362(a)(2), not merely on the fact that the proceedings occurred outside Texas.

23. The alleged disobedience of the refiling bar occurred after that order and involved the Texas filing. That chronology does not itself answer whether Global was enforcing a prepetition judgment under subsection (a)(2). Nor does calling the request procedural resolve the issue: obtaining compulsory process can be an affirmative enforcement step before liability or money is finally awarded. The question is the nature of the relief pursued and whether the exception permits it. The Petitioning Creditors do not assume that every proceeding concerning postpetition conduct satisfies subsection (a)(1), or that the reserved fee request was collection of a prepetition debt under subsection (a)(6).

24. The September 1 ruling confirmed the existing statutory stay; it did not create that stay for the first time or require another written injunction before § 362 could operate. *Chesnut* explains the danger of proceeding unilaterally in the face of an asserted stay, although its holding concerned disputed estate property rather than the court-enforcement exception presented here. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302–04 (5th Cir. 2005). The warning establishes notice and supports judicial examination; it does not eliminate the need to decide the exception.

**B. The Court Must Examine the Proceeding's Actual Purpose, Not Its Contempt Label.**

25. Under *Halo Wireless, Inc. v. Alenco Communications, Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 588–95 (5th Cir. 2012), § 362(b)(4) requires examination of the proceeding's public-policy and pecuniary purposes. Private initiation does not automatically defeat the exception, and a sanctions proceeding can serve a genuine governmental purpose even if it benefits an opposing litigant. But ordinary adjudication or enforcement of private rights does not become police or regulatory action simply because the requested order is labeled contempt.

26. The record supports examining this proceeding as private enforcement. Global identified itself as a judgment creditor entitled to the requested relief; asserted that Green Sapphire was negating relief Global had obtained; relied on the Petitioning Creditors' claims, filing motives, discovery, and communications; and requested its own fees and costs. Ex. D ¶¶ 1–4, 28, 50–56. In Chicago it sought compulsory adjudication of those allegations against Green Sapphire while arguing that an affected petitioning creditor could not participate. Ex. B, Tr. 17:8–21. The Petitioning Creditors submit that these features show an effort to protect Global's collection position and obtain private litigation relief, rather than a freestanding regulatory proceeding.

27. The Petitioning Creditors recognize the competing judicial interest in enforcing a refiling bar and deterring litigation misconduct. *Alpern v. Lieb*, 11 F.3d 689, 690–91 (7th Cir. 1993), treats Rule 11 sanctions as excepted governmental enforcement, and *Halo* discusses that rationale. The distinction urged here is not that Global is private or requested fees. It is that the particular relief pursued seeks enforcement of Global's prepetition litigation position and adjudication of disputed creditor independence through compulsory proceedings against the debtor. The Court should determine the dominant purpose and actual requested effect on this record, rather than adopt either side's label.

28. The Prior Stay Motion cited *Erhardt v. Baldassarre (In re Erhardt)*, 618 B.R. 832, 841–46 (N.D. Ill. 2020), which distinguishes civil-contempt enforcement serving private rights from sanctions serving public policy. Erhardt concerned coercive turnover and incarceration, not a bankruptcy refiling bar, and is persuasive rather than controlling here. It nevertheless demonstrates why the source and function of the asserted enforcement matter. The Court should apply that distinction to the Chicago Motion's requested relief and the order actually obtained, not assume that all civil contempt is stayed.

29. The Chicago court's issuance of an order deserves full consideration; so do this Court's express reservations. The Petitioning Creditors do not contend that the mere reservation of fees establishes prohibited collection, and the supplied record shows no payment or levy under the Chicago order. Their claim is that **the affirmative enforcement itself was stayed**. If any portion instead qualifies under § 362(b)(4), the Court should identify that portion and distinguish adjudication of liability from enforcement of a money judgment.

### C. Actual Notice Is Established, but Civil Contempt Requires the Additional Objective Showing.

30. Civil contempt ordinarily requires clear and convincing evidence that an operative order required particular conduct and the respondent failed to comply. *Whitcraft v. Brown*, 570 F.3d 268, 271–72 (5th Cir. 2009). Here the asserted obligation is the statutory stay expressly confirmed by this Court, not an invented command forbidding every Chicago appearance. The evidence of notice is direct: Global heard the ruling, acknowledged it, was reminded of it in Chicago, and thereafter pressed the show-cause request. Ex. A, Tr. 33:12–17, 35:16–17; Ex. B, Tr. 8:11–23, 10:20–11:20.

31. For the requested civil-contempt remedy, the Petitioning Creditors undertake to establish the absence of an objectively reasonable basis for the challenged conduct under the

principles of *Taggart v. Lorenzen*, 587 U.S. 554, 561–65 (2019). *Taggart* addressed a discharge injunction; the Second Circuit has applied its fair-ground-of-doubt standard to § 105 contempt for violation of a corporate debtor's stay. *In re Windstream Holdings, Inc.*, 105 F.4th 488 (2d Cir. 2024). Knowledge and intentional action alone do not resolve that distinct contempt inquiry.

32. Global's refusal to postpone affirmative process after an express warning supports a finding of deliberate action, not accident. It also undermines any contention that Global lacked notice of the stay. But the Court's reservation of the § 362(b)(4) issue, its assessment of the available cases, and the Chicago court's ruling may support an objective-uncertainty defense. Ex. A, Tr. 31:13–33:21; Ex. C ¶ 6. The Petitioning Creditors ask the Court to decide that defense on the specific private-enforcement record, not infer contempt simply from the warning or the fact that Global appeared in Chicago.

33. The proposed show-cause procedure is therefore warranted without prejudging the ultimate sanction. It will identify what Global says authorized the immediate compulsory process and permit the Court to decide whether that explanation was objectively reasonable. If the Court concludes that it was, retrospective civil contempt should not be imposed on that theory. A prospective determination can still end uncertainty over further enforcement and preserve orderly administration of this case.

**D. Any Remedy Must Be Civil, Causally Supported, and Available to the Particular Claimant.**

34. Section 105(a) supports civil measures implementing the Code, not a freestanding punitive power. *Terrebonne Fuel*, 108 F.3d at 612–13. The Petitioning Creditors request relief designed to end a proven violation and, where legally authorized, compensate actual loss. They do not seek incarceration, a fixed punitive fine, an automatic daily penalty, or personal sanctions

against Global's attorneys or director. Any later coercive measure must identify the required act, Global's ability to comply, and a meaningful opportunity to purge.

35. The monetary request must also respect *Ayers*. That decision confirms an injured individual creditor's ability to recover under § 362(k), but expressly rejects using § 105 or inherent power to award the same damages merely because a claimant falls outside the statute's protected group. *Ayers*, slip op. at 4–5 & n.2. The Petitioning Creditors therefore do not claim that all firm or entity petitioners are automatically entitled to § 362(k) damages, or that Rule 9020 creates that entitlement. Any statutory claim by natural-person petitioner Vanoverberghe would require proof of his own qualifying injury and the applicable elements, not attribution of another petitioner's or the debtor's expenses to him.

36. Before any compensation is awarded, the Court should require a claimant-specific showing of authority, direct injury, causation, and reasonable amount. The expenses at issue must be attributable to the challenged post-ruling Chicago enforcement, including any reasonably necessary effort to address its consequences; the ordinary cost of defending the Texas dismissal motion is not automatically recoverable. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–10 (2017), requires compensatory inherent-power sanctions to track the loss caused by the sanctioned conduct. No fee amount, executed expense declaration, or entitlement of Green Sapphire is assumed in this motion.

**E. The Requested Process Respects Both Courts and the September 1 Reservation.**

37. This motion is not an appeal from the Chicago order, a request to command Judge Cox, or a collateral merits trial of the alleged collusion. It asks this Court to determine and enforce the stay arising in this case against a party appearing here. Any directive to Global should describe the particular enforcement prohibited and permit lawful steps to advise the Chicago court, seek a

continuance or appropriate modification, and obtain review or stay relief. The Petitioning Creditors request no instruction to disregard an existing Chicago order.

38. Rules 9020 and 9014 require reasonable notice and an opportunity to be heard. The proposed order identifies the acts at issue and the potential civil remedies, sets a response and hearing, and leaves the burden of proof with the Petitioning Creditors. Global should appear through authorized counsel; an individual's attendance or testimony should be required only through an appropriate further order or lawful process. Prompt consideration is requested.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Petitioning Creditors respectfully request that the Court: (a) issue an order requiring Global to show cause concerning the specific September 1 post-ruling enforcement described above; (b) set a response deadline and a reasonably noticed evidentiary hearing; (c) after hearing, determine whether that conduct violated the automatic stay and warrants civil contempt under the governing standard; (d) direct cessation and appropriate remedial steps for any proven, unexcepted enforcement, without directing another court; (e) establish a procedure for any legally available, claimant-specific compensatory relief; (f) alternatively, if retrospective contempt is unwarranted, clarify the stay's prospective application and Global's obligations; and (g) grant such other lawful relief as is just.

Dated: September 9, 2026.

Respectfully submitted,

**TITTLE SANTIAGO, PLLC**

*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
Manolo R. Santiago
Texas Bar No. 24129258
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316
Email: btittle@tittlesantiago.com
Email: msantiago@tittlesantiago.com

**COUNSEL FOR PETITIONING CREDITORS**

**CERTIFICATE OF CONFERENCE**

The undersigned counsel certifies that he contacted Global Capital's counsel, Kevin McCullough, via email on September 9, 2026, at 10:42 p.m. Mr. McCullough has yet to respond whether his client opposes the relief requested.

*/s/ Brandon J. Tittle*
Brandon J. Tittle

**CERTIFICATE OF SERVICE**

I certify that on September 9, 2026, a true and correct copy of this Motion and all attachments was served through the Court's CM/ECF system on all registered users and separately served, in the manner required by Federal Rules of Bankruptcy Procedure 9014 and 7004, on Green Sapphire Holdings Inc., Global Capital Partners, LLC, Access Management, S.A.S., Inc., the Office of the United States Trustee, and all other affected non-ECF parties at their proper service addresses and in their proper Rule 7004 capacities.

*/s/ Brandon J. Tittle*
Brandon J. Tittle