**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>GREEN SAPPHIRE HOLDINGS, INC.,<br><br>Putative Debtor. | Case Number 26-33254-mvl7<br><br>Chapter No.: 7 (Involuntary) |

**GLOBAL CAPITAL PARTNERS, LLC'S AMENDED OBJECTION TO THE PETITIONERS' MOTION FOR LEAVE TO FILE FIRST AMENDED VOLUNTARY PETITION TO CORRECT CHAPTER DESIGNATION, PRESERVE THE JULY 21, 2026 PETITION DATE, AND CONFIRM THE CONTINUING EFFECT OF FILED JOINDERS**

Global Capital Partners, LLC ("Global Capital"), by and through undersigned counsel, respectfully submits the following amended objection to the *Amended Motion and Brief for Leave to File First Amended Involuntary Petition to Correct Chapter Designation, Preserve the July 21, 2026 Petition Date, and Confirm the Continuing Effect of Filed Joinders* [Docket No. 36] (the "Motion") filed by petitioning creditors lecocqassociate, Legamaro Banipal LLP, and Charles-Hubert Vanoverberghe (collectively, the "Petitioners").

## PRELIMINARY STATEMENT

1. The Petitioners filed their involuntary petition in bad faith and in collusion with the putative debtor Green Sapphire Holdings, Inc. ("Green Sapphire"). Green Sapphire is not in financial distress. It has approximately $22 million in assets and only $11.23 million in liabilities. The petition thus lacks any valid reorganization purpose. Instead, the Petitioners filed for the admitted purpose of triggering the automatic stay and thwarting Global Capital's efforts to enforce

its final judgment against Green Sapphire in the Delaware Court of Chancery. Their motion to amend their bad faith filing should be denied.

2. The Petitioners filed their petition under chapter 7 of the Code. In their Motion—filed nearly a month later—they now allege they simply "checked the wrong box" on Form 205 and seek to switch to chapter 11.[1] The cause of their admitted mistake underscores that this petition was filed to obstruct the Chancery Court proceedings, not to pursue any legitimate bankruptcy objective. Petitioners admitted at the hearing before this Court on August 18, 2026 that they selected chapter 7 due to "moving too quickly to try to get it filed the morning before the receivership [hearing]."[2] Their desire to shield Green Sapphire from proper supervision of the Chancery Court is further reflected in their assertion that a receivership would "loot the company."[3] Put simply, the Petitioners' own admissions that they filed to preempt appointment of a receiver is the very reason this case is improper.

3. In filing the Motion, the Petitioners have not followed the proper procedural mechanism to convert this case to a case under chapter 11 of the Bankruptcy Code. To change the chapter under which a case proceeds, a motion to convert under 11 U.S.C. § 706 is required—not

---

[1] *See* ECF 1 at 1.

[2] Exhibit 1 (Transcript of Status Hearing, Aug. 18, 2026) at 6:20-7:1-2.

[3] Ex. 1 at 21:1-11. Additionally, Green Sapphire has told this Court that it needs the automatic stay's protections to block appointment of a receiver that would cause it to comply with the Delaware judgment, and to relitigate ownership questions the judgment resolved in its RICO action in the Illinois District Court:

> What's in the – in the RICO complaint, it is alleged over and over again that what Global Capital has done, it's operated with the trust's own former fiduciaries to get this loan and security agreement done.
>
> And seek receivers over those [Green Sapphire and Alpha Carta], to ultimately do what? Take control of them to dismiss the RICO action.

Ex. 1 25:12-15; 26:8-10.

a motion to "amend" the petition. Rule 15's liberal amendment standard cannot be stretched to allow petitioning creditors to switch the chapter of an involuntary petition after filing, particularly where that switch alters the rights and expectations of all parties in interest.

4. At bottom, Green Sapphire is ineligible to be a chapter 11 debtor. Green Sapphire is the debtor in a voluntary Chapter 11 bankruptcy case filed in the Northern District of Illinois (the "Illinois Case"), assigned to the Honorable Jacqueline P. Cox. On July 17, 2026, Judge Cox dismissed the Illinois Case for cause pursuant to 11 U.S.C. § 1112(b). Judge Cox held that the case "was filed in bad faith to interfere with the Chancery Court": "The Debtor's focus herein has not been to reorganize or to pursue other proper bankruptcy goals and objectives but to continue to litigate issues now resolved by the Delaware Court."[4] Just four days after the Illinois Case was dismissed, on July 21, 2026, the Petitioners—Green Sapphire's own long-time counsel—filed this involuntary petition in the Northern District of Texas, a district with no meaningful connection to Green Sapphire, its operations, or its creditors. This involuntary petition lacks any legitimate bankruptcy purpose. Green Sapphire is not in financial distress. It is a non-operating holding company with no business to reorganize. The involuntary petition was filed in bad faith for the purpose of triggering the automatic stay against Global Capital, Green Sapphire's principal creditor, and to circumvent the adverse rulings of the Delaware Court of Chancery.

5. In their Motion, the Petitioners indicate that Green Sapphire does not oppose the Chapter 11 correction and "has stipulated that the Chapter 7 selection was inadvertent." Motion at ¶ 5. This unusual alignment of interests—with the alleged debtor and the petitioning creditors agreeing to a chapter 11 designation—effectively allows a debtor that did not voluntarily file to

---

[4] Exhibit 2 (Order Granting Motion to Dismiss and Refiling Bar, July 17, 2026, *In re Green Sapphire Holdings, Inc.*, No. 25 B 07412 (N.D. Ill. Bankr.) ("*In re Green Sapphire I*")) at 9.

end up in a debtor-in-possession-controlled chapter 11 proceeding. This cooperative posture raises serious questions about whether the involuntary petition is being used as a vehicle for a *de facto* voluntary filing, circumventing the eligibility and good-faith requirements applicable to voluntary cases and the bar order.

6. Alternatively, if the Court is inclined to grant the Motion and convert this case to one under chapter 11, such conversion should be conditioned upon appointment of a chapter 11 trustee pursuant to Sections 105, 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code. As set forth herein, Global Capital submits that "cause" exists under Section 1104(a) of the Bankruptcy Code to appoint a chapter 11 trustee.

## ARGUMENT

7. The Motion should be denied for three principal reasons. *First*, the Petitioners seek to change the chapter designation through an "amendment" rather than through the proper statutory mechanism — a motion to convert under 11 U.S.C. § 706. *Second*, even if construed as a motion to convert, conversion should be denied because the totality of the circumstances — including Green Sapphire's lack of any viable reorganization plan, its status as a non-operating holding company, the successive bankruptcy filings, and its efforts to evade a bar order — demonstrates bad faith conduct. *Third*, the request for relation back to the original petition date should likewise be denied because the petition reflects an attempt to circumvent the bar order.

### I. The Bankruptcy Code Does Not Permit Amending A Petition to Change Chapters.

8. The Petitioners' Motion is procedurally deficient because it seeks to change the chapter designation through an improper mechanism. The Bankruptcy Code specifies a process for changing the chapter under which a case proceeds. Section 706(b) specifically provides: "On request of a party in interest and after notice and a hearing, the court may convert a case under this

chapter to a case under chapter 11 of this title at any time." 11 U.S.C. § 706(b). However, this right is not absolute, and "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d) (emphasis added).[5] Critically, the Code provides no mechanism for "amending" a petition to change its chapter designation. *See generally* 11 U.S.C. § 706. Courts have repeatedly denied motions to convert where the movant has acted in bad faith or conversion would be futile. *See, e.g., Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007); *In re Jacobsen*, 609 F.3d 647 (5th Cir. 2010).

9. The Petitioners do not offer any authority holding that a petition may be amended to invoke an entirely different chapter of the Bankruptcy Code. The single case cited in the Motion, *Georgia Jewelers v. Bulova Watch Co.*, 302 F.2d 362 (5th Cir. 1962), offers no support. There, the court allowed the petitioning creditors to amend the involuntary petition to include more detail about specific alleged preferential transfers – not to change chapters of the Bankruptcy Code. *Id.*

10. The scope of "amending" an involuntary petition extends only to, for example, (a) adding additional evidentiary support, as in Georgia Jewelers, (b) adding or removing petitioning creditors (*see e.g., In re All Media Properties, Inc.*, 5 B.R. 126, 138-39 (Bankr. S.D. Tex. 1980) (allowing for amendment of involuntary petition to add new petitioning creditor); *see also In re Legacy Exploration, LLC*, 2026 WL 922397, at *6-7 (Bankr. N.D. Tex. Apr. 3, 2026) (recognizing that the Bankruptcy Code allows for additional creditors to join the petition)), or (c) curing jurisdictional defects (*see e.g., In re Rodriguez Alzugaray*, 606 B.R. 159, 166 (Bankr. D.P.R.

---

[5] Under the plain language of Section 706(d), Green Sapphire may not be a debtor under chapter 11, because such classification would be in direct violation of the bar order.

2019)). The Petitioners have identified no case law or other support that demonstrates conversion to a different chapter of the Bankruptcy Code by amendment is permitted.

11. By framing the chapter switch as a mere clerical correction subject to Rule 15's liberal amendment standard, the Petitioners seek to sidestep this analysis altogether and avoid the statutory safeguards that protect against abuse of the bankruptcy process.

**II. The Totality of the Circumstances Warrants Denial of Conversion to Chapter 11.**

12. Even if the Motion could be construed as a motion to convert (it cannot), such a request should similarly be denied. A debtor does not have an absolute right to convert to chapter 11. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007); *In re Jacobsen*, 609 F.3d 647 (5th Cir. 2010). When considering a request to convert, courts weigh several factors to determine whether conversion would "maximize value to creditors and grant the debtor an opportunity to reorganize." *In re Hennig*, 2025 WL 3072984, at *2 (Bankr. W.D. Tex. Nov. 3, 2025). The factors are the following:

> (1) whether the debtor has only one asset;
>
> (2) whether the debtor acted improperly before the filing of the bankruptcy;
>
> (3) whether there are relatively few unsecured creditors;
>
> (4) whether there are pending foreclosure proceedings against the debtor's property;
>
> (5) whether the debtor has been resisting one creditor in particular and has lost in an action against that creditor in another forum;
>
> (6) whether the filing of the petition has the effect of allowing the debtor to evade court order;
>
> (7) whether the debtor ceased doing business activities and has no employees; and
>
> (8) whether there is a lack of possibility for reorganization.

> (9) whether the timing of the petition indicates an effort to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (10) whether the debtor has little or no cash flow; and
>
> (11) whether the debtor cannot meet current expenses.

*In re George Love Farming, LC*, 366 B.R. 170, 178 (Bankr. D. Utah 2007) (citing *In re Laguna Assoc. Ltd P'ship*, 30 F.3d 734, 738 (6th Cir. 1994) and *In re Nursery Land Dev., Inc*., 91 F.3d 1414, 1416 (10th Cir. 1996))); *In re FMO Assocs. II, LLC*, 402 B.R. 546, 551 (Bankr. E.D.N.Y. 2009). Here, the factors strongly favor not converting this case from chapter 7 to chapter 11.

*(1) Whether the debtor has only one asset.*

13. While this is not a traditional single-asset case, the sole purpose of Green Sapphire's Illinois Case and now this bankruptcy case has been to stave off litigation with Global Capital and to avoiding transferring control over property that belongs to Global Capital. There is no ongoing business enterprise or going-concern value to protect through a reorganization. Petitioners seek to use the bankruptcy process solely to pursue litigation claims that could have been pursued in other venues. This debtor has lingered in bankruptcy for over a year in the Illinois Case and now here, with no viable or proposed path forward. This factor favors dismissal.

*(2) Whether the debtor acted improperly before the filing of the bankruptcy.*

14. Green Sapphire acted improperly before the filing of this bankruptcy case by repeatedly violating rulings of the Delaware Court of Chancery. On April 14, 2026, following a three-day trial and a 120-page post-trial opinion, the Chancery Court entered a final judgment that declared Global Capital the "sole rightful owner" of the certain shares and real property in St.

Barts,[6] and awarded it damages and attorney's fees totaling $8.6 million. The judgment directed Green Sapphire to transfer control over the shares and properties to Global Capital, and permanently enjoined Green Sapphire from further claiming ownership or interfering with Global Capital's ownership. Ex. 3 at ¶ 1.b & ¶ 3.a.

15. Green Sapphire immediately proceeded to collaterally attack and repeatedly violate the final judgment. Green Sapphire filed a motion to void the Delaware judgment in the Illinois Bankruptcy Case—which was denied.[7] It filed an adversary complaint in the Illinois Bankruptcy Case seeking the same relief—which was voluntarily dismissed. It moved to amend its long-running RICO case in the District Court of the Northern District of Illinois to assert claims against Global Capital related to the same matters already decided in Delaware. And it pursued new litigation in France seeking to enjoin Global Capital from exercising control over the shares and properties. The Court of Chancery has already held Green Sapphire and its principals in contempt for the new French litigation.[8] Green Sapphire has shown a dogged refusal to accept adverse rulings, instead seeking to relitigate issues that have already been decided against it in multiple forums.

---

[6] Exhibit 3 (Order and Final Judgment, April 14, 2026, *Global Capital Partners LLC et ano v. Green Sapphire Holdings, Inc.*, C.A. No. 2024-0877-JTL (Del. Ch.) ("Court of Chancery Case")) at ¶ 1.a.

[7] Exhibit 4 (Hearing Transcript, June 16, 2026, *In re Green Sapphire I*) at 17:10-16 (Judge Cox describing Green Sapphire's motion to void the Delaware judgment as "utterly baseless. There's no legal authority. No legal basis for it. There's no factual basis for it.").

[8] Exhibit 5 (Memorandum Addressing Contempt, June 23, 2026, Court of Chancery Case) at 2, 15 ("The filing of the Paris Action was unjustified. It violates the Judgment and is contumacious," and "The Borrower's efforts to proceed with the three other foreign actions violated the Judgment and were contumacious.").

*(3) Whether there are relatively few unsecured creditors.*

16. Green Sapphire has few unsecured creditors relative to its asset base. Green Sapphire, according to its own schedules, statements of financial affairs, and monthly operating reports filed under penalty of perjury in the Illinois Case, holds approximately $22 million.[9] Payment of Global Capital's $8.6 million money judgment would leave Green Sapphire with $13.4 million in assets to pay all debts. In the Illinois Case, Green Sapphire disclosed $2.63 million in third-party debts.[10] The Petitioners' asserted claims add an incremental $894,980.[11] So Green Sapphire's third-party debts outside Global Capital total $3.52 million. With $13.4 million in available assets after paying Global Capital, Green Sapphire has the ability to pay all other creditors—including the Petitioners—more than three times over. The Petitioners cannot complain that some of the assets are not immediately liquid, because they could readily be sold or mortgaged. This factor favors denying conversion.

*(4) Whether there are pending foreclosure proceedings against the debtor's property.*

17. On July 21, 2026, the Delaware Court of Chancery heard argument on a motion to appoint a limited-purpose receiver to cause Green Sapphire to comply with its obligations under

---

[9] In the Illinois Bankruptcy Case, Green Sapphire most recently reported total assets of $39.2 million. *See* Exhibit 6 (Monthly Operating Report, June 21, 2026, *In re Green Sapphire I*) at 2. Green Sapphire ascribes $17.5 million of that amount to the St. Barts real properties. *See* Exhibit 7 (Schedule A/B: Assets—Real and Personal Property, October 30, 2025, *In re Green Sapphire I*) at 2. Because the St. Bart's real properties belong to Global Capital, Green Sapphire's actual assets total $22 million.

[10] Exhibit 8 (Schedules, June 24, 2025, *In re Green Sapphire I*) at 10, 12-14 (Green Sapphire reporting that unsecured creditors hold claims with known amounts totaling $2,480,000 and that one secured creditor holds a claim of $150,000).

[11] The petitioning creditors have asserted claims totaling $968,644.66. But $72,803 of the amount claimed by Lecocqassociate was previously disclosed in Green Sapphire's schedules.

the final judgment. The Petitioners filed their bankruptcy petition one hour before the hearing in the Court of Chancery. This factor weighs in favor of denying conversion.

*(5) Whether the debtor has been resisting one creditor in particular and has lost in an action against that creditor in another forum.*

18. Green Sapphire has been unsuccessfully resisting its principal creditor, Global Capital, in the Delaware Court of Chancery. Green Sapphire lost against Global Capital in the Chancery Court, and since then has been misusing the bankruptcy laws in an attempt to thwart Global Capital from enforcing its judgment.

*(6) Whether the filing of the petition has the effect of allowing the debtor to evade a court order.*

19. The Petitioner's filing of this bankruptcy case is an attempt to evade the Illinois court's bar order. As described above, the unusual alignment of interests—with the alleged debtor and the petitioning creditors agreeing to a chapter 11 designation—would effectively permit a debtor that did not voluntarily file to end up in a debtor-in-possession-controlled chapter 11 proceeding in violation of a court order barring that same debtor from refiling. The coordinated nature of this arrangement strongly suggests that the involuntary petition is functioning as a backdoor voluntary filing, designed to evade the eligibility requirements, good-faith standards, and the Bar Order that would otherwise prevent Green Sapphire from filing a chapter 11 case on its own. Given Green Sapphire's and the Petitioners' conduct—including the apparent violation of the bar order—this case should not be converted to a chapter 11 proceeding.

*(7) Whether the debtor ceased doing business activities and has no employees.*

20. Green Sapphire is a non-operating holding company with no active business operations and no employees.12 It provides no services and conducts no day-to-day commercial activities. This factor weighs in favor of denying conversion.

*(8) Whether there is a lack of possibility for reorganization.*

21. Any "reorganization" of Green Sapphire is futile. Green Sapphire is a non-operating holding company with no active business to reorganize. It has no employees, no ongoing operations, and little cash flow or revenue-generating activities. After lingering in the Illinois Case for more than a year, no efforts were ever made in the Illinois Case to sell, reorganize, or liquidate any of Green Sapphire's purported assets. Green Sapphire never sought debtor-in-possession financing in the Illinois Case—and has not sought such financing here—because it is not a financially distressed operating company in need of reorganization. Instead, it is a litigation vehicle. This bankruptcy case represents yet another attempt by Green Sapphire, through petitioners, to thwart civil proceedings and relitigate claims already adjudicated in Delaware and in the Illinois Case. The Petitioners have provided no justification for why the estate should bear the additional costs of a chapter 11 case (including the expenses of a potential creditors' committee) should this case be converted. *Dan Thomason & Assocs., LLC v. Breakwell*, 2010 WL 3385025, at *1 (N.D. Tex. Aug. 25, 2010) (evidence that a reorganization attempt would be futile sufficient to deny conversion); *In re Broad Creek Edgewater, LP*, 371 B.R. 752 (Bankr. D.S.C. 2007) (complete management void existing in debtor was such as to warrant denial of conversion motion where reorganization would be futile.).

---

[12] Ex. 1 at 21:8-10 (petitioners admitting "this is a holding company. This is not an operating entity.").

*(9) Whether the timing of the petition indicates an effort to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights*.

22. Petitioners have admitted that they timed their petition to frustrate Green Sapphire's principal creditor, Global Capital, from enforcing its final judgment in the Court of Chancery. The judgment declared Global Capital to be the sole rightful owner of certain shares and real property. Green Sapphire has refused to relinquish control over these assets to Global Capital. The timing of the petition was intended to block appointment of a receiver that would cause Green Sapphire to transfer control over the assets to their rightful owner in compliance with the final judgment. This factor weighs in favor of denying conversion.

*(10) Whether the debtor has little or no cash flow*.

23. Green Sapphire has little cash flow because it has no active business operations. As a non-operating holding company, Green Sapphire has no ongoing commercial activities that would produce cash flow. Instead, Green Sapphire holds investment assets that appreciate in value but generate little cash flow. This factor weighs in favor of denying conversion.

*(11) Whether the debtor cannot meet current expenses*.

24. Green Sapphire appears to have few current expenses aside from legal fees.[13] Notably, Green Sapphire has never requested debtor-in-possession financing or any other financing from a lender, in the Illinois Case or in this case, which suggests it has sufficient cash on hand to pay its expenses as they come due and is not in financial distress. This factor weighs in favor of denying conversion.

---

[13] Ex. 1 at 21:9-11 (petitioners admitting that "[t]he only creditors you're going to have at a holding company are professional fees and taxes, which is exactly what the Debtor's schedules are going to show.").

**III. The Request for Relation Back to the Original Petition Date Should Be Denied.**

25. The Court should also deny the request for the amended petition to relate back to the original petition date of July 21, 2026. While joinder of additional petitioning creditors can, in some circumstances, relate back to the date of filing of an original petition, that should not be permitted here, where the petition has been filed in bad faith as a run around the bar order and in collusion with Green Sapphire. *See, e.g., In re Bedingfield*, 96 F. 190, 192 (N.D. Ga. 1899) (holding that, so long as the filing of a defective petition was not done in bad faith or the equivalent of a "sham" petition, joining creditors can cure the defect). Moreover, the Petitioners want the benefits of the July 21, 2026 petition date — including the § 546 lookback periods for avoidance actions, the automatic stay, and priority positions — while changing the substantive nature of the relief. Allowing relation back would reward a party for filing under one chapter and then switching to another after securing the benefits of the earlier filing date.

**IV. Alternatively, the Court Should Appoint a Chapter 11 Trustee.**

26. In the alternative, should the Court be disposed to grant the Motion and convert this proceeding to a case under chapter 11, Global Capital respectfully submits that any such conversion should be conditioned upon the appointment of a chapter 11 trustee pursuant to Sections 105, 1104(a)(1), or 1104(a)(2) of the Bankruptcy Code. As demonstrated herein, sufficient "cause" exists under Section 1104(a) to warrant such appointment based on, inter alia, dishonesty, incompetence, and gross mismanagement, and that the appointment of a chapter 11 trustee would serve the interests of all creditors.

## CONCLUSION

27. For these reasons, Global Capital respectfully requests the Court to deny the Motion and, if an order for relief is granted (it should not be), appoint a chapter 7 trustee.

Dated September 10, 2026

**DENTONS US LLP**

*/s/ Spencer D. Hamilton*

Spencer D. Hamilton
Texas Bar No. 24087656
DENTONS US LLP
100 Crescent Court, Suite 900
Dallas, Texas 75201
Tel: (214) 259-0900
Email: spencer.hamilton@dentons.com

Kevin McCullough
ROCHELLE MCCULLOUGH
901 Main St #3200
Dallas, TX 75202
Tel: (214) 953-0182
Email: kdm@romclawyers.com

*Counsel to Global Capital Partners, LLC*

Kenneth J. Pfaehler (*pro hac vice*)
Nicholas W. Petts (*pro hac vice* )
DENTONS US LLP
1900 K Street N.W.
Washington, D.C. 20006
Tel: (202) 408-6468
Email: kenneth.pfaehler@dentons.com
nicholas.petts@dentons.com

Robert E. Richards (*pro hac vice*)
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel: (312) 876-7396
Email: robert.richards@dentons.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he served a copy of the foregoing on all counsel of record via the Court's CM/ECF System on September 10, 2026.

By: */s/ Spencer D. Hamilton*
Spencer D. Hamilton