David W. Parham, SBN: 15459500
R. Adam Swick, SBN: 24051794
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Tel: (214) 720-4300
Email: david.parham@akerman.com
adam.swick@akerman.com

**COUNSEL FOR GREEN SAPPHIRE HOLDINGS INC.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 26-33254-mvl** |
| | § | |
| **GREEN SAPPHIRE HOLDINGS INC.,** | § | **Chapter 11** |
| | § | |
| ***Debtor and Debtor in Possession*** | § | |
| | § | |
| **GREEN SAPPHIRE HOLDINGS INC., as Debtor and Debtor in Possession,** | § | |
| | § | |
| | § | |
| ***Plaintiff,*** | § | **Adversary No. _________________** |
| **v.** | § | |
| | § | |
| **GLOBAL CAPITAL PARTNERS, LLC,** | § | |
| | § | |
| ***Defendant*.** | § | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR VIOLATION OF THE AUTOMATIC STAY**

Plaintiff Green Sapphire Holdings Inc. ("Green Sapphire" or the "Debtor"), as debtor and debtor in possession, by and through undersigned counsel, files this Complaint against Global Capital Partners, LLC ("Global Capital" or "Defendant"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This adversary proceeding seeks to protect the Debtor's estate and this Court's jurisdiction from Defendant's continued, unauthorized prosecution of a parallel proceeding in another court against the Debtor. On September 21, 2026, following the involuntary petition



88595832;2

commenced against the Debtor on July 21, 2026, this Court stated that it would enter an order for relief, and the Debtor is now a debtor in possession under chapter 11 of the Bankruptcy Code. Pursuant to section 362(a) of the Bankruptcy Code, an automatic stay is in effect. Indeed, an automatic stay has been in effect continuously since July 21, 2026, when the involuntary petition was filed under section 303.

2. On July 31, 2026, Defendant filed a Motion to Dismiss [Docket No. 11] (the "Motion to Dismiss") in this case, alleging that the Debtor colluded with the Petitioning Creditors (defined below). Notwithstanding the automatic stay, shortly after a status conference in this Court setting deadlines and dates for briefing and discovery on the Motion to Dismiss, Defendant filed a proceeding in the United States Bankruptcy Court for the Northern District of Illinois (the "Chicago Court") seeking to hold the Debtor in contempt, impose sanctions, and recover fees and costs against the Debtor (the "Motion for Contempt"). The Motion for Contempt essentially makes the same arguments asserted in the Motion to Dismiss—that the Debtor colluded with the Petitioning Creditors. That proceeding is a continuation of an action against the Debtor and an act to collect against the Debtor and its estate, threatening estate property and the Debtor's ability to reorganize.

3. At a September 1, 2026 hearing in this case, the Motion for Contempt was brought to the Court's attention, and the Court confirmed that the automatic stay was in effect, reminded Global Capital to seek permission rather than forgiveness, and warned that Global Capital would proceed in Chicago at its own peril. Global Capital's counsel acknowledged that the Court's statements were "received and heard."

4. Later that same afternoon, however, Global Capital affirmatively sought an order requiring Green Sapphire to answer contempt allegations arising from the filing of this case,



88595832;2

without explaining to the Chicago Court this Court's statements from earlier that day. Ex. A, Tr. 33:3-21, 35:16-17; Ex. B, Tr. 3:11-24, 10:20-11:20.

5. Global Capital repeatedly agreed that a hearing in Chicago would follow an evidentiary hearing on the Motion to Dismiss in this Court, stating: "We pushed for the hearing on our motion to dismiss. We stand by that in Texas." Ex. B. Tr. 11:11-20.

6. Nonetheless, on September 9, 2026—after the parties conducted discovery in this Court—Global Capital withdrew the Motion to Dismiss [Docket No. 57] ("Withdrawal"), seeking to do exactly what it said it would not do: proceed against the Debtor in another forum before this Court could hear the merits in direct violation of the stay.

7. At the September 21, 2026 hearing in this Court, this Court again warned Global Capital: "I'm very concerned that once we get to September 30th there, Global Capital will be participating in a hearing against the Debtor while a stay is happening here." Ex. G. 44:16-19. Nonetheless, Global Capital made clear that "we [Global Capital] intend to move forward on the 30th." *Id.* at 53:10-13.

8. Global Capital seeks more than damages from the Debtor. Global Capital also seeks findings in the Chicago Court to impair litigation and recovery rights involving Global Capital in the Cayman Islands and France. The threatened use is to portray the Texas filing as debtor-orchestrated misconduct and to use any adverse findings as evidence in other courts to smear Green Sapphire and support coercive, representative-displacing, or sanction-based relief affecting estate interests abroad.

9. The Debtor seeks: (a) a declaration that the automatic stay bars Defendant's continued prosecution of the Illinois proceeding; (b) a determination that Defendant violated the automatic stay; and (c) preliminary and permanent injunctive relief under 11 U.S.C. § 105(a),

restraining Defendant from prosecuting the Illinois proceeding and from other acts that threaten the estate. The restraint would run against Global Capital, not the Chicago Court or any other court.

## II. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(a), and the Standing Order of Reference in this District. This proceeding arises under the Bankruptcy Code and arises in and relates to the Debtor's chapter 11 case, No. 26-33254.

11. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O), because it concerns the administration of the estate, motions to terminate, annul, or modify the automatic stay, and other matters affecting the adjustment of the debtor-creditor relationship and the liquidation of estate assets.

12. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the entry of final orders and judgment by this Court.

13. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409 because this proceeding arises in and relates to the Bankruptcy Case pending in this district.

14. The statutory and procedural predicates for the relief requested include 11 U.S.C. §§ 105(a) and 362, 28 U.S.C. § 2201, and Federal Rules of Bankruptcy Procedure 7001(7), 7001(9), and 7065.

## III. PARTIES

15. Green Sapphire is a nonindividual debtor in this Court. Under §§ 323 and 1107(a) and Bankruptcy Rule 6009, it may prosecute and defend estate proceedings through authorized

counsel. Its claimed injury is direct: coercive enforcement against it, impairment of its own litigation interests, and interference with the estate's lawful administration.

16. Global Capital is a Delaware limited liability company that has appeared and sought affirmative relief in the Texas case and prosecuted the Motion for Contempt. The complaint and issued summons will be served in compliance with Bankruptcy Rule 7004, including service directed to an appropriate officer, managing or general agent, or authorized agent. Notice also will be provided to Global Capital's known counsel. Its main-case appearance does not eliminate the requirements for service in this adversary proceeding.

## IV. FACTUAL ALLEGATIONS

### A. The Involuntary Petition and the Order for Relief

17. On July 21, 2026, three creditors—lecocqassociate, Legamaro Banipal LLP, and Charles-Hubert Vanoverberghe—commenced an involuntary case against the Debtor under 11 U.S.C. § 303 (the "Original Petitioning Creditors"). Lazareff Le Bars Legal Advisory Limited (ADGM) and Lazareff Le Bars SARL (the "Joining Creditors," and collectively with the Original Petitioning Creditors, the "Petitioning Creditors") later joined.

18. The filing of the involuntary petition operated as a stay under 11 U.S.C. § 362(a), applicable to all entities, and the commencement of the case created an estate. *See* Chapter 7 Involuntary Petition Against Green Sapphire Holdings Inc. [Docket No. 1].

19. On July 31, 2026, Defendant filed a Motion to Dismiss [Docket No. 11] (the "Motion to Dismiss") this case, alleging that the Debtor colluded with the Petitioning Creditors.

20. On August 18, 2026, this Court held a status conference regarding the Motion to Dismiss (the "Status Conference"). The Court determined that an evidentiary hearing was necessary to address the disputed allegations. Ex. A 35:6-7. Global Capital expressly asked the

Court to hold September 14 for a hearing. The Court ultimately required written responses by September 4, 2026, and reserved September 14, 2026, for the hearing. *See* Ex. A, Tr. 10:19-24.

21. Four days after the Status Conference, Defendant filed the Motion for Contempt in the Chicago Court without providing notice to counsel for the Debtor or the Petitioning Creditors in this case.

22. This Court held another hearing on the morning of September 1, 2026. At the September 1 hearing, the Motion for Contempt was discussed. This Court determined that the automatic stay existed, invoked *In re Chesnut's* permission-before-action principle, and warned that Global Capital would proceed in Chicago at its own peril. It declined to enjoin the Chicago Court, stated that reopening alone was not necessarily a violation, and reserved any violation for a subsequent motion. Ex. A, Tr. 30:19–31:2, 33:3–21, 34:1–10, 35:9–13.

23. That same day in a hearing before the Chicago Court, Global Capital continued to oppose postponement of the requested show-cause order in Chicago. At the same time, it represented that it stood by the Texas hearing and accepted a Texas-first evidentiary sequence. Its counsel stated that the return date and evidentiary hearing in Chicago could occur after September 14th, explaining that Global Capital had pushed for, and still wanted, the hearing on its Texas dismissal motion. Ex. B, Tr. 10:20–11:20. Later, counsel again requested a Chicago show-cause date after September 14th. *Id.* 19:18–24.

24. The Chicago Court granted limited reopening. The resulting order, Docket No. 153, requires a debtor representative to appear on September 30 to show cause why Green Sapphire should not be held in contempt for having the Texas involuntary petition filed, and preserves Global's ability to seek related fees and expenses. Ex C.

25. Nonetheless, on September 9, 2026, Global Capital withdrew its Motion to Dismiss and moved to transfer this Bankruptcy Case to the Northern District of Illinois [Docket No. 56] (the "Motion to Transfer Venue"). *See* Withdrawal. Global Capital did not obtain relief from the automatic stay before commencing and prosecuting the Chicago proceeding against the Debtor, and Global Capital continues to prosecute that proceeding and to seek monetary relief against the Debtor.

26. At the September 21, 2026 hearing, Global Capital again represented to this Court that it was proceeding in Chicago. It did so despite the ongoing automatic stay, this Court's prior admonition that Global Capital should ask for permission rather than forgiveness, and this Court's warning that Global Capital proceeded at its own peril.

27. On September 21, 2026, this Court stated that Green Sapphire was in chapter 11 bankruptcy and would be operating as a debtor in possession.

**B. Harm to the Estate**

28. The Debtor is a non-operating holding company with limited liquidity and no operating revenue. *See* Green Sapphire Opp'n to Global Capital MTD [Docket No. 40] 8.

29. The Debtor's cash is minimal and is not replenished by any operating revenue. The Debtor's schedules as of June 24, 2025 reported cash and cash equivalents of $29,017.98. As of August 31, 2026, the Debtor has reported available cash of approximately $14,313.57, with no operating revenue with which to fund litigation or pay monetary awards. Wolfe Decl. ¶ 5.

30. The overwhelming majority of the Debtor's scheduled value is not cash. Of approximately $38,977,000 in total scheduled property as of June 24, 2025, roughly $36,463,500 consisted of non-publicly traded equity interests in other entities that cannot be readily converted to cash, including interests in a limited number of private LLCs and partnerships. The value of these illiquid equity assets in other entities,

along with its other non-cash assets, has only declined since June, 2025 and will be reflected in the Debtor's schedules to be filed in this case. Wolfe Decl. ¶ 6.

31. The estate's principal source of potential recovery for creditors is a large body of unliquidated causes of action. The Debtor's schedules identify numerous contingent claims — including fraudulent-transfer, civil RICO, breach-of-fiduciary-duty, conversion, and related claims — against former fiduciaries and third parties, and against Global Capital Partners, LLC ("Global Capital") itself. The estate has also pleaded avoidance and recovery claims and related claims exceeding $40 million, and holds interests implicated in proceedings in France and the Cayman Islands. *See* Adversary Complaint. Realizing value from these claims requires the Debtor to marshal and prosecute them; that is the core of the estate's reorganization prospects. Wolfe Decl. ¶ 7.

32. Global Capital's conduct forces the Debtor to litigate simultaneously on several fronts: the contempt and sanctions proceeding in the United States Bankruptcy Court for the Northern District of Illinois, which seeks to hold Green Sapphire in contempt and to impose sanctions, fees, and costs, with a hearing scheduled for September 30, 2026, and related proceedings abroad. Wolfe Decl. ¶ 8.

33. The Debtor does not have the cash to fund this multi-front defense. With approximately $14,313.57 in available cash, no operating revenue, and no full-time employees, every dollar and every hour the Debtor is forced to spend defending Global Capital's parallel proceedings is a dollar and an hour taken from administering the estate and prosecuting the estate's own causes of action and this chapter 11 case. Wolfe Decl. ¶ 9.

34. The Debtor must obtain debtor-in-possession financing and run this case, not litigate a clear stay violation. Diverting current DIP financing opportunities and depleting any resulting liquidity to defend Global Capital's parallel actions would impair the estate's ability to pursue recoveries for all creditors. Defending the Motion for Contempt will negatively affect Green Sapphire's ability to get favorable terms for DIP financing, and may potentially eliminate the Debtor's ability to get DIP financing at all. Wolfe Decl. ¶ 10.

35. Global Capital has before and likely intends to deploy any adverse ruling or findings from the Chicago Court as evidence in other courts to argue that Green Sapphire's pursuit of rights abroad is abusive, that its position should be foreclosed without resolution of the underlying claim, or that control of those rights or assets should be displaced. *See generally* Dupre Decl. The Debtor seeks to prevent that sanctions-driven impairment of estate rights.

36. The threatened harm is not that any Chicago ruling would bind this Court. Rather, the harm is that Global Capital could use adverse findings as ammunition in other Courts and contexts to disparage the Debtor's chapter 11 filing, DIP financing, reorganization efforts, and impair other litigation positions.

## V. <u>CLAIMS FOR RELIEF</u>

**COUNT I — DECLARATORY JUDGMENT THAT THE AUTOMATIC STAY APPLIES**

37. Plaintiff incorporates the preceding paragraphs as if fully set forth herein. The filing of the involuntary petition operated as a stay, applicable to all entities, of, among other things, the commencement or continuation of a proceeding against the Debtor and any act to collect a prepetition claim against the Debtor. 11 U.S.C. § 362(a)(1), (a)(6). The stay attached upon the filing of the § 303 petition, and the commencement of the case created the estate. *See In re Mortg. Am. Corp.*, 714 F.2d 1266, 1273–75, 1277–78 (5th Cir. 1983) (holding that, upon the filing of an involuntary petition, § 362(a)(3) stayed creditor actions to obtain estate property and emphasizing that bankruptcy centralizes estate-property disputes to prevent a race to the courthouse).

38. Defendant's prosecution of the Illinois proceeding—a contempt and sanctions action against the Debtor seeking fees and costs payable from estate property—is a continuation of a proceeding against the Debtor and an act to collect against the Debtor within the meaning of § 362(a). An actual, justiciable controversy exists between the Debtor and Defendant concerning the application of the automatic stay. The Debtor is entitled to a declaration that § 362(a) bars

Defendant's continued prosecution of the Illinois proceeding and any effort to obtain or enforce monetary relief against the Debtor or the estate absent relief from the stay.

**COUNT II — VIOLATION OF THE AUTOMATIC STAY**

39. Plaintiff incorporates the preceding paragraphs as if fully set forth herein. Defendant had knowledge of the automatic stay, including this Court's September 1, 2026 confirmation that the stay is in effect, yet intentionally continued to prosecute the Illinois proceeding against the Debtor without first obtaining relief from the stay. Because the Debtor is not an individual, the Debtor seeks redress for Defendant's stay violation through this Court's civil contempt power under 11 U.S.C. § 105(a), including compensatory sanctions, attorneys' fees and costs, and such other relief as is appropriate. Bankruptcy courts may use § 105(a) to enforce their own orders and may retain limited "clean-up" jurisdiction to resolve pending contempt matters after dismissal of the underlying case. *See In re Direct Media Power, Inc.*, No. 18 C 7397, 2019 WL 4601736, at *4–6 (N.D. Ill. Sept. 23, 2019) (affirming post-dismissal contempt jurisdiction where the bankruptcy court enforced cash-collateral orders that it had entered during the case).

**COUNT III — PRELIMINARY AND PERMANENT INJUNCTION**

40. Plaintiff incorporates the preceding paragraphs as if fully set forth herein. Section 105(a) authorizes this Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, including an order directed to litigants whose continued pursuit of other-court proceedings threatens the integrity of the debtor's estate, once bankruptcy jurisdiction is established. 11 U.S.C. § 105(a); *see In re Davis*, 730 F.2d 176, 183–84 (5th Cir. 1984) (recognizing bankruptcy-court authority under § 105(a), once jurisdiction is established, to enjoin litigants from pursuing actions in other courts that threaten estate integrity, and treating the restraint as directed to litigants rather than the other court). A temporary § 105(a) injunction may be appropriate in unusual circumstances where the action to be enjoined would adversely affect the debtor's ability to reorganize or deplete property of the estate, but § 105(a) does not authorize relief that exceeds bankruptcy jurisdiction or effectively discharges nondebtor liability. *See Matter of Zale Corp.*, 62 F.3d 746, 760–62 (5th Cir. 1995) (distinguishing permissible

temporary injunctions in unusual circumstances from improper permanent injunctions of third-party claims and requiring appropriate adversary procedures for injunctive relief).

41. For the reasons set forth above and in any accompanying motion, the Debtor satisfies the standard for injunctive relief: it is likely to succeed on the merits of its stay claim, it faces irreparable harm absent an injunction, the balance of harms favors the estate, and an injunction serves the public interest in centralized and orderly bankruptcy administration. *See Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 418–19 & n.15 (5th Cir. 2001) (identifying the four preliminary-injunction elements and explaining the standard of appellate review for preliminary-injunction rulings). The Debtor is entitled to preliminary and permanent injunctive relief restraining Defendant, and those acting in concert with it, from commencing, continuing, or prosecuting the Illinois proceeding against the Debtor, and from taking any other action to obtain or enforce monetary or coercive relief against the Debtor or the estate, absent further order of this Court.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Green Sapphire Holdings Inc. respectfully requests that the Court: (a) declare that the automatic stay under 11 U.S.C. § 362(a) applies to and bars Defendant's continued prosecution of the Illinois proceeding and any act to obtain or enforce monetary or coercive relief against the Debtor or the estate absent relief from the stay; (b) determine that Defendant violated the automatic stay and award compensatory sanctions, attorneys' fees, and costs under 11 U.S.C. § 105(a) in an amount to be proven; (c) preliminarily and permanently enjoin Defendant, and all persons acting in concert with it, from commencing, continuing, or prosecuting the Illinois proceeding against the Debtor and from taking any other action that threatens property of the estate or the Debtor's reorganization, absent further order of this Court; (d) award the Debtor its costs and attorneys' fees to the extent permitted by law; and (e) grant such other and further relief as the Court deems just and proper.

Dated: September 22, 2026

Respectfully submitted,

**AKERMAN LLP**

*/s/ R. Adam Swick*

David W. Parham, SBN: 15459500
R. Adam Swick, SBN: 24051794
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
adam.swick@akerman.com

**COUNSEL FOR GREEN SAPPHIRE HOLDINGS INC., DEBTOR AND DEBTOR IN POSSESSION**