**DECHERT LLP**
Marcus A. Helt (TX 24052187)
Jacob J. King (TX 24136951)
2651 N. Harwood Street, Suite 120
Dallas, Texas 75201
Telephone: (214) 453-4900
Email: marcus.helt@dechert.com
jacob.king@dechert.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| GREEN SAPPHIRE HOLDINGS, INC.,[1] | § | |
| | § | Case No. 26-33254-mvl11 |
| Debtor. | § | |

**DEBTOR'S JOINDER TO PETITIONING CREDITORS' EMERGENCY MOTION FOR AN ORDER TO SHOW CAUSE WHY GLOBAL CAPITAL PARTNERS, LLC SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE AUTOMATIC STAY CONFIRMED ON SEPTEMBER 1, 2026, AND FOR RELATED RELIEF**

Green Sapphire Holdings, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), files this joinder (the "Joinder") in support of the Petitioning Creditors' Emergency Motion for an Order to Show Cause why Global Capital Partners, LLC Should not be Held in Civil Contempt for Violating the Automatic Stay Confirmed on September 1, 2026, and for Related Relief (the "Show Cause Motion") [Dkt. 61], and respectfully states as follows:

[1] The last four digits of Green Sapphire Holdings, Inc.'s federal tax identification number are 8470. The Debtor's mailing address is 3500 Oak Lawn Ave., Ste. 460, Dallas, Texas 75219.

## PRELIMINARY STATEMENT

1. The Petitioning Creditors' request for an order to show cause is well-founded and tracks the warnings this Court itself issued on September 1, 2026. The Court confirmed that the automatic stay was "absolutely" in effect, invoked the "FAFO" principle, and cautioned Global Capital that it would "proceed at its own peril" if it moved forward in Illinois. Tex. Sept. 1 Hr'g Tr. 34:12–35:10. The Court underscored the point: "We have a pending hearing in this court." *Id.* at 35:10. Global Capital's answer was to march into the Illinois bankruptcy court that same afternoon and press for compulsory contempt process against the Debtor.

2. Global Capital now tries to defer this reckoning by labeling the Illinois show cause hearing a "contingent future event" and arguing that any stay challenge is unripe. The label does not fit the record. The Debtor is spending money and devoting time *today* on counsel, on Illinois briefing, and on prosecuting the Adversary Proceeding before this Court to defend against the enforcement proceedings Global Capital set in motion after this Court's warning. The injury is present and ongoing, not hypothetical. And this Court, as a bankruptcy court, knows well that bankruptcy proceedings, whether a status conference, a motion for continuance, or any interim hearing, can produce an order with real and preclusive consequences for a debtor. The automatic stay does not require parties to wait for an order to be entered before seeking the Court's protection.

## BACKGROUND

3. On July 17, 2026, the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division, dismissed the Debtor's initial bankruptcy case (the "Initial Bankruptcy Case") upon a motion by Global Capital Partners, LLC ("Global Capital"). *Order Granting Motion to Dismiss and Refiling Bar (Docket 20), In re Green Sapphire Holdings, Inc.*, No. 25-07412 (Bankr. N.D. Ill. July 17, 2026) (Dkt. 140) (the "Dismissal Order").

4. On July 21, 2026 (the "Petition Date"), several of the Debtor's creditors (the "Petitioning Creditors") filed an involuntary petition [Dkt. 1] (the "Involuntary Petition") against the Debtor initiating this chapter 11 case (the "Chapter 11 Case").

5. On July 31, 2026, Global Capital filed a Motion to Dismiss [Dkt. 11] (the "Motion to Dismiss").

6. On August 18, 2026, this Court held a status conference on the Motion to Dismiss (the "Status Conference") and determined that an evidentiary hearing was necessary to resolve the disputed allegations. Tex. Aug. 18 Hr'g Tr. 30:1-2. Global Capital asked the Court to hold September 14, 2026, for that hearing, *id.* at 36:18-22, and the Court directed the parties to confer on a date the week of September 14, with written discovery responses due by September 4. *Id*. at 35:1-14, 39:1-2, 39:17-21.

7. On August 21, 2026, Global Capital filed a motion to reopen the Initial Bankruptcy Case and for the issuance of an order to show cause why the Debtor should not be held in contempt because the Petitioning Creditors filed the Involuntary Petition. *Global Capital Partners, LLC's Motion for an Order Reopening the Case for the Purpose of Enforcing the Order Barring Refiling and for an Order to Show Cause Why Green Sapphire Holdings, Inc. Should not be Held in Contempt of Court*, *Green Sapphire I,* (Dkt. 145) (the "Motion to Reopen").

8. On September 1, 2026, the Court heard the Petitioning Creditors' motion to impose the automatic stay and confirmed the effect of the automatic stay [Dkt. 50]. The Court took no position on whether Global Capital's other activities violated the automatic stay. *See id*.

9. That same day, the Illinois bankruptcy court entered an order requiring the Debtor to appear and show cause why it should not be held in contempt for the filing of the Involuntary Petition. *Order Granting Motion for an Order Reopening the Case for the Purpose of Enforcing*

*the Order Barring Refiling and for an Order to Show Cause Why Sapphire Holdings, Inc. Should not be Held in Contempt of Court* Filed *by Global Capital Partners, LLC, Green Sapphire I*, (Dkt. 153) (the "Show Cause Order").

10. On September 9, 2026, the Petitioning Creditors filed the Show Cause Motion, seeking an order to show cause why Global Capital should not be held in civil contempt for its enforcement actions in the Illinois bankruptcy court in violation of the automatic stay.

11. Also on September 9, 2026, Global Capital withdrew (the "Withdrawal") its Motion to Dismiss. *See Notice of Withdrawal* [Dkt. 57]. The Withdrawal is particularly egregious. This Court was previously reluctant to proactively stop the Illinois proceeding, primarily because an evidentiary hearing was scheduled before this Court on September 14, 2026:

> And so, again, I won't enjoin what Global Capital has done -- excuse me, I won't take any position on what it's done so far in terms of filing the motion to reopen. But at this point, Global Capital will proceed at its own peril. The automatic stay is in effect. We do have a pending motion to dismiss. And so I can only state what I've stated in a very recent opinion, which is it's kind of an FAFO principle; fool around and find out. I don't want anyone to trip up on the automatic stay. **We have a pending hearing in this court**.

Tex. Sept. 1 Hr'g Tr. 34:2-10 (emphasis added).

12. On September 21, 2026, this Court stated that Green Sapphire was in chapter 11 bankruptcy and would be operating as a debtor in possession. Tex. Sept. 21 Hr'g Tr. 5:25-6:1. The Court also warned Global Capital about going forward in the Illinois bankruptcy court on September 30, 2026:

- "I mean, obviously, the stay was in place before. If there's a circumstance which a stay was doubly in place, it's doubly in place now." Tex. Sept. 21 Hr'g Tr. 58:14-17.

- "I'm very concerned that once we get to September 30th there, Global Capital will be participating in a hearing against the Debtor while a stay is happening here." Tex. Sept. 21 Hr'g Tr. 44:16-19.

13. Despite these warnings, Global Capital told the Court "we intend to move forward on the 30th" in the Illinois bankruptcy court. Tex. Sept. 21 Hr'g Tr. 53:10-12.

14. Accordingly, the next day the Debtor was forced to file an adversary complaint and accompanying motion for a temporary restraining order. *Green Sapphire Holdings, Inc. v. Global Capital Partners, LLC (In re Green Sapphire Holdings, Inc.)*, Adv. No. 26-03096-mvl (Bankr. Sept. 22, 2026) (Adv. Dkts. 1-8) (the "Adversary Proceeding"). Further, the Debtor had to file lengthy opposition papers to the Motion to Reopen and for Contempt that were due September 25, 2026. *Green Sapphire I*, [Dkts. 164-166].

**BASIS FOR RELIEF**

15. Section 362(a) of the Bankruptcy Code stays, among other things, the "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case". 11 U.S.C. § 362(a)(2). Global Capital violated, and continues violating, the stay by prosecuting its contempt effort against the Debtor based on the Dismissal Order in the Initial Bankruptcy Case. Global Capital has already obtained an order compelling the Debtor to appear and show cause for contempt.

16. Global Capital's lead argument — that the show cause hearing is a "contingent future event" and thus unripe — mistakes the issue. Its post-ruling conduct has already violated the stay and continues to do so with every brief, hearing, and compelled response the Illinois case now demands. Beneath the ripeness label, Global Capital's objective is unchanged: strip the Debtor of bankruptcy protection so Global Capital can continue to divest valuable property for less than fair value. The Petitioning Creditors filed the Involuntary Petition precisely to prevent that result and to ensure fair and equitable treatment of all creditors.

**I. Global Capital's threat of a stay violation is ripe for review.**

17. Federal court jurisdiction is limited to justiciable cases and controversies. U.S. CONST. ART. III, Sec. 2, Cl. 1. For a controversy to be justiciable, the controversy must be, among other things, ripe. *See Texas v. U.S.*, 523 U.S. 296, 300–01 (1998). In determining whether a controversy is ripe, the Court should consider (i) the fitness of the issues for judicial decision; and (ii) the hardship to the parties of withholding judgment. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

18. In *Texas v. United States*, the Supreme Court concluded that a justiciable controversy did not exist because Texas had not enforced the statute which would create a potential controversy under the Voting Rights Act. 523 U.S. at 300. The controversy was not ripe because key facts regarding the function of the state law and its impact on voting rights were not present. *Id*. That case does not apply here, because all the facts are before the Court. The Court has an adequate record to determine (i) whether the automatic stay applies to Global Capital's motion to show cause; (ii) whether Global Capital violated the automatic stay by obtaining an order to show cause in the Initial Bankruptcy Case; and (iii) whether Global Capital has caused the Debtor harm as a result of its willful actions.

19. The Show Cause Motion is ripe because the record is complete and the harm is current. The Debtor is spending real money *today* — on Illinois briefing, on the Adversary Proceeding, and on management time diverted from reorganization — in response to Global Capital's post-ruling enforcement. That the September 30 setting was continued is immaterial: a bankruptcy court can issue an order at any point in a reopened case, including at a status conference or on a motion for continuance. Waiting until the Illinois court actually rules on contempt would saddle this estate with issue-preclusion and res judicata consequences that are only unwound after

more litigation. Both prongs of *Abbott Labs* — fitness and hardship — therefore favor adjudication now.

**II. Global Capital's actions have violated, and will continue to violate, the automatic stay.**

20. Global Capital's actions since September 1, 2026, have violated the automatic stay and will continue to do so until the Court acts against Global Capital.

21. Global Capital's stay violations have already forced the Debtor to spend material amounts on attorneys' fees, including filing the Adversary Proceeding, briefing the opposition to the Motion to Reopen, and now responding to Global Capital's continued Illinois prosecution. Those expenditures are real and present, not contingent or future. The Debtor's attention has been diverted from reorganization to fending off Global Capital's stay violations, with corresponding harm to the estate.

22. All of Global Capital's actions further its goal of controlling the Debtor's valuable assets for its exclusive benefit. Global Capital is the subject of robust allegations regarding fraudulent transfers, and other claims which are best investigated in the context of the Chapter 11 Case. Without the benefit of the automatic stay, Global Capital would be able to loot the Debtor and harm it to the point where it would not be able to pursue actions against Global Capital. Inside of the Chapter 11 Case, the Debtor has an opportunity to marshal its assets, conduct an investigation, and hold Global Capital accountable. Global Capital knows this which is why it continues to litigate in other venues in violation of the automatic stay.

**III. The Illinois Court's decision to reopen the Initial Bankruptcy Case was procedurally improper.**

23. The Initial Bankruptcy Case was not administratively closed after a completed reorganization but rather was dismissed. When administration is cut short by dismissal, reopening is improper. *See, e.g., In re Bowman*, 526 B.R. 802, 806 (B.A.P. 8th Cir. 2015); *In re Finch*, 378

B.R. 241, 246 (B.A.P. 8th Cir. 2007); *In re Singleton*, 358 B.R. 253, 257 (D.S.C. 2006); *In re Archer*, 264 B.R. 165, 168 (Bankr. E.D. Va. 2001); *In re Critical Care Support Servs.*, 236 B.R. 137, 140 (E.D.N.Y. 1999); *In re Woodhaven, Ltd.*, 139 B.R. 745, 747-48 (Bankr. N.D. Ala. 1992); *In re Garcia*, 115 B.R. 169, 170 (Bankr. N.D. Ind. 1990); *In re Coletta*, 380 B.R. 140, 146 n.14 (Bankr. E.D. Pa. 2007) (the proper vehicle is relief from the dismissal order, not reopening). The Illinois bankruptcy court therefore may lack jurisdiction or authority to continue to preside over the Initial Bankruptcy Case, and Global Capital never sought proper relief from the Dismissal Order. On this record, this Court may be the only court with jurisdiction over the Debtor and its estate, a fact that reinforces the case for granting the Show Cause Motion.

## CONCLUSION

WHEREFORE, the Debtor hereby joins in the Show Cause Motion and requests that the Court grant all relief requested therein and as is just and proper.

Dated: October 16, 2026
Dallas, Texas

**DECHERT LLP**

*/s/ Jacob J. King*

Marcus A. Helt (TX 24052187)
Jacob J. King (TX 24136951)
2651 N. Harwood Street, Suite 120
Dallas, Texas 75201
Telephone: (214) 453-4900
Email: marcus.helt@dechert.com
jacob.king@dechert.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Joinder was served on all parties entitled to notice through the Bankruptcy Court's CM/ECF system and that no further notice is required.

Dated: October 16, 2026
Dallas, Texas

*/s/ Jacob J. King*
Jacob J. King